```
 1                  UNITED STATES OF AMERICA
                 UNITED STATES DISTRICT COURT
 2               CENTRAL DISTRICT OF CALIFORNIA
                       WESTERN DIVISION
 3
                          - - -
 4              HONORABLE R. GARY KLAUSNER,
             UNITED STATES DISTRICT JUDGE PRESIDING
 5                        - - -

 6
    STRONG TRADING, INC.,          )
 7                                 )  CERTIFIED COPY
                                   )
 8              PLAINTIFF,         )
                                   )  CV 21-04206 RGK
 9   VS.                           )
                                   )
10   UNIQUE DESIGNS, INC., et      )
     al.,                          )
11                                 )
                                   )
12              DEFENDANTS.        )
                                   )
13                                 )
                                   )
14                                 )
     _____)
15

16
                     TRIAL DAY 4
17          REPORTER'S TRANSCRIPT OF PROCEEDINGS
                 Friday, JUNE 17, 2022
18                   A.M. SESSION
               LOS ANGELES, CALIFORNIA
19

20

21

22

23           SHERI S. KLEEGER, CSR 10340
            FEDERAL OFFICIAL COURT REPORTER
24          312 NORTH SPRING STREET, ROOM 402
             LOS ANGELES, CALIFORNIA 90012
25                PH:  (213)894-6604
```

```
 1

 2

 3

 4
    APPEARANCES OF COUNSEL:
 5
    ON BEHALF OF PLAINTIFF:
 6
                BY:  MICHAEL YORK, ESQUIRE
 7                   KATHLEEN APARCE, ATTORNEY AT LAW
                     JESSICA CRABBE, ATTORNEY AT LAW
 8

 9
    ON BEHALF OF DEFENDANT:
10
                BY:  YASHDEEP SINGH, ESQUIRE
11                   GERALD OHN, ESQUIRE

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              LOS ANGELES, CALIFORNIA; FRIDAY, JUNE 17, 2022
 2                          A.M. SESSION
 3
 4
 5              THE COURT:  Okay.  Let the record reflect
 6   that all the jurors are in their respective seats in the
 7   jury box.
 8              Ladies and gentlemen, we've gotten to that
 9   the point whereas I've said before, we've heard all the
10   evidence that you're to use to determine what the facts
11   of the case are.
12              The attorneys get a chance to argue the case
13   to you.  Remember what they say is not evidence.  If it
14   differs from the way that you remember it, it is your
15   memory that controls.
16              I can tell you right now, no one is trying
17   to mislead you or anything else.  People see and hear
18   things differently.  Take that into consideration.  They
19   are going to tell you how they think it should be
20   interpreted.  It's worthwhile for you to listen to that.
21   But it's your memory that controls as to what the
22   evidence says.
23              Ready today to go?  Counsel.
24              MS. ALPARCE:  Thank you, Your Honor.
25              THE COURT:  Counsel, do you want me to give
```

1   you a warning on time at any particular time.

2              MS. ALPARCE:  I think I'm okay, Your Honor.

3              THE COURT:  Okay.

4              MS. ALPARCE:  Good morning.  Please let me

5   introduce myself and my colleagues.  My name is Kathleen

6   Alparce.  Along with Michael York and Jessica Crabbe, we

7   represent the plaintiff and counter-defendant Strong

8   Trading.

9              We try to keep things as simple as possible

10  so we can finally get to this point.  The evidence, it's

11  all through.  And we have done our best to present our

12  cases so that you can reach a final conclusion, a

13  verdict.

14             You soon will have the very important task

15  to tell us what the truth is, the truth that we have

16  worked so hard to determine.  And I stand here humbled

17  by the time and sacrifice that each of you have given

18  these last few days.

19             You sat here patiently giving this case the

20  attention and the respect that it surely deserves.

21             Strong Trading also did that.  Strong

22  Trading is a small, family-run company with only 13

23  employees.  And yet three of them have been sitting here

24  patiently, waiting along with you, because they take

25  this case very seriously.

1          They also take seriously the money that
2     Unique Designs has owed it for quite sometime.
3          Yet in a company of 200 people, not one
4     representative from Unique Designs has been sitting here
5     with you today.
6          You, as a group, have the most important
7     role as I said.
8          But as attorneys, it has been our job to
9     assist you with the task to get to this truth by asking
10    questions, by showing documents and identifying key
11    facts to help you analyze the evidence and analyze it
12    fairly.
13          Mr. Singh highlighted the importance of
14    obligations and promises at the beginning of this case.
15    He mentioned that Strong Trading had its obligations and
16    promises to fulfill.  And we couldn't agree more.
17          My colleague, Mr. York, showed you our first
18    slide.
19          Our first slide to answer four simple
20    questions of breach of contract.  One, did Strong
21    Trading and Unique Designs enter into a contract for the
22    purchase of goods?  Yes.
23          Did Unique Designs receive the goods?  Yes.
24          Unique Designs was given a tracking number.
25    You were shown a document with the tracking number.  The

1   customer had that tracking number and the customer

2   confirmed delivery.

3          So, yes, they received the goods.

4          In fact you heard from Unique Designs' very

5   own CEO, Mr. Tejas Shah, they not only received the

6   goods but they sold them.

7          What about the rest of the goods?  They

8   still have them to this day.

9          Third question, did Unique Designs ever

10  return them?  No.

11         You heard multiple times throughout the two

12  days of testimony from Amy Chu, Kurt Chien and again

13  importantly Mr. Tejas Shah that Unique Designs did not

14  return the goods.

15         So again the answer is no.

16         Question four, did Unique Designs pay for

17  those goods?  Simple answer, no.

18         You heard testimony from Mr. Chien that over

19  a three-year period Unique Designs purchased tens of

20  thousands of pieces of jewelry from Strong Trading

21  before even making one complaint.  One complaint among

22  thousands of purchase orders, tens of thousands of

23  colored stone pieces and within hundreds of other

24  customers.

25         So again, the simple answer is no.  They did

1    not pay for the goods.

2              Instead, Unique Designs thought it would be

3    easier to come up with reasons, no matter how untrue,

4    and no matter how confusing, just so they wouldn't have

5    to pay Strong Trading the $369,441.12.

6              So as you can see here, Strong Trading

7    fulfilled its obligations and promise to Unique Designs.

8    Unique Designs did not.

9              This goes back to what I told you earlier

10   when we started the case, when we told you earlier, that

11   this case is really simple.

12             So as simple as it is, how can Unique

13   Designs defend themselves against it?

14             Well, smoke and mirrors.  Excuses.

15   Confusion.  Smoke and mirrors that they tried to

16   convince us and now that they are trying to confuse you.

17             In fact, I think we can all agree that

18   you've heard some interesting and confusing testimony

19   over the last couple of days.  But among that are two

20   ways that Mr. Singh said he would attempt to confuse you

21   as part of his opening statement.  He focused on the

22   wrong party and the wrong stone.

23             Let's talk about this wrong party.  We

24   showed you a contract between Strong Trading and Unique

25   Designs where they agreed to use Strong Jewelry Hong

1   Kong, which we've pretty much beat to the ground and

2   know as Strong Trading's Hong Kong office.  It is just

3   their Hong Kong office.

4            They're the shipper in the transactions

5   between Strong Trading and Unique Designs.  The

6   contract, Strong Trading's, Unique Designs.

7            You also saw Unique Designs own purchase

8   orders.  On the purchase orders it identified Strong

9   Trading as the seller.  You saw email communications

10  from Kurt Chien.  Kurt Chien is an employee of Strong

11  Trading.  His email said they were coming from Strong

12  Trading.  His email had his address and telephone number

13  from Strong Trading.  Where?  Here in California.

14           You heard testimony that Unique Designs

15  never had any communications with Strong Jewelry in Hong

16  Kong.  Also, to state the obvious, Unique Designs filed

17  a lawsuit against Strong Trading, not Strong Jewelry

18  Hong Kong.

19           So, again, this message is simple.  The

20  parties of the contract are Strong Trading and Unique

21  Designs.

22           And it is Unique Designs who owed the money

23  on these open invoices pursuant to this contract.

24           The same contract says that if Unique

25  Designs fails to follow the payment instructions and pay

1   on time, then it is Strong Trading who has the right to

2   file a lawsuit to get it.  And that's simply why we are

3   here today.

4           Now, let's talk about this wrong stone.  You

5   also heard some perhaps confusing testimony about Unique

6   Designs' claim that Strong Trading did this bait and

7   switch by providing glass instead of created stone.

8   There was no evidence of this.

9           Why?  Because Unique Designs admitted that

10  they still have the stones in their possession until

11  this day.  And today, they refuse to return the stones.

12          So what would have been the most compelling

13  evidence to present to you at trial?  The stones.  Where

14  are the stones?  What's Unique hiding?

15          Let's look at this timeline.  Mr. Chien

16  testified that from 2018 through 2021, Unique Designs

17  ordered over 70,000 pieces of created stone without

18  complaint.

19          But that is until after Strong Trading had

20  the nerve to stop providing Unique Design merchandise

21  essentially for free.  I mean, how dare Strong Trading

22  finally draw the line and insist that Unique Designs pay

23  what they are owed.

24          But Unique Designs left Strong Trading

25  really with no choice.  Remember, Strong Trading is a

1   family-owned business of 13 employees.

2              Even if Unique Designs did not live up to

3   their responsibilities, Strong Trading still chose to do

4   so.

5              Strong Trading is a business.  A business

6   that has to pay bills.  A business that has to payroll,

7   their employees, and they had to survive, just like the

8   rest of us.

9              Strong Trading could have decided that they

10  didn't want to meet their obligations, that they didn't

11  want to pay what they owed, because Unique Design wasn't

12  doing that.

13             But that's not the way Strong Trading does

14  business.  And that's really not who Strong Trading is.

15  Strong Trading honors its obligations, honors their

16  promises.  And even though Unique Designs does not,

17  that's what they had to do.

18             So after months of finally being patient and

19  not being paid, they had to put a stop to Unique

20  Designs.  They couldn't afford to continue to give them

21  merchandise for free.

22             Remember, Unique Designs continued to place

23  orders even though they weren't paying them any money.

24             Remember, Strong Trading is just the go

25  between.  They are the middle person between customer

1    and factory.

2                   So that each time Unique Designs places this

3    order, Strong Trading incurs a debt to the factory.

4                   They have to pay the factory.  So Strong

5    Trading had no choice but to stop.  They had to stop

6    processing these orders for Unique Designs because their

7    invoices were going unpaid.

8                   And finally, 35 days later, Unique Design

9    says for the first time that there is an issue.

10                  Mr. Chien's track record at Strong Trading

11   speaks for itself.  18 years.  Hundreds of customers.

12   Thousands of orders.  Tens of thousands of orders of

13   created stones, and one complaint.

14                  The only one complaint of bait and switch

15   came from Unique Designs.

16                  So let me say it again:  This case is

17   simple.

18                  But now let me ask you this:  Where were the

19   stones?  Where were the experts?  Where were the expert

20   reports for the stones that Strong Trading actually sold

21   to Unique Designs?

22                  Where are the customers?  Where's Unique

23   Designs?  They are not here.  They aren't here.  They

24   haven't been here because there is no evidence.  And

25   there is no wrong stone issue, period.

1          So the only issue that should be before you

2     is that Unique Designs does not want to pay this

3     $369,441.12 that is owed to Strong Trading.

4          After you hear our argument, you are going

5     to go to your jury room and start deliberating this

6     case.  You'll be given a few documents to review and

7     complete.  And one of those documents is going to look

8     like this.

9          It may be a little bit different, depending

10    on what the judge gives you.  But let me show you how

11    simple it is to fill out nonetheless.  It starts with,

12    We the jury answer the questions submitted to us as

13    follows:  Did Strong Trading and Unique Designs enter

14    into a contract?  Yes.

15          THE COURT:  Counsel, I want you to go

16    through it.  But I will tell you, the verdict form will

17    look different than this.

18          Go ahead.

19          MS. ALPARCE:  Thank you, Your Honor.  Did

20    Strong Trading do all or substantially all of the

21    significant things the contract required it to do?  Yes.

22          Did Strong Trading prove that Unique Designs

23    breached its contract?  Yes.

24          Did Unique Designs fail to do something that

25    the contract required it to do?  Yes.

1               Was Strong Trading harmed by Unique Designs'

2    breach of contract?  Yes.

3               Five simple questions.  Five simple answers

4    of yes.

5               What are Strong Trading's damages?

6    $369,441.12.  That is the simple response.

7               On behalf of Strong Trading, my colleagues,

8    the Court, we truly appreciate you.  And we thank you

9    for your time.  And we look forward to you rendering a

10   verdict in favor of Strong Trading.  Thank you.

11               THE COURT:  Thank you, Counsel.

12               Counsel.

13               MR. SINGH:  Your Honor, before I begin we

14   will need to begin the Apple Play again so I can connect

15   my computer.

16               THE COURT:  Go ahead.

17               MR. SINGH:  Good morning, everybody.  Well,

18   we made it.  This will be the last time you hear from

19   me, hopefully for all of you.  And I, like Counsel said,

20   on behalf of myself and my client, I thank you all for

21   your time and energy as jurors in this case.

22               Your selfless acts of being here to resolve

23   the dispute between two parties you have to interest in

24   is a vital part of our justice system.

25               On this I agree with opposing counsel.  But

1    I must say that I disagree with and I find personally

2    offensive for highlighting Mr. Shah the president of the

3    company not being here as a result of him contracting

4    COVID when he arrived after flying out here from New

5    Jersey.

6              This is an incredibly, incredibly important

7    case for us.  And for you to take on the civic duty is

8    very much appreciated.

9              At the outset of this case I talked about

10   two really important issues.  You've heard about them

11   over and over again the past couple of days.  The wrong

12   party issue, the wrong items issue.  Over the course of

13   trial you heard substantial evidence proving both of

14   those issues.

15             I will explain why the evidence on those

16   issues when applied to the law leads to a verdict in

17   Unique Designs' favor.

18             Along the way I will actually show you the

19   evidence that proves those issues.

20             The wrong party has brought this lawsuit.

21   One of the elements of Strong Trading's breach of

22   contract claim rests completely on this wrong party

23   issue.

24             That element, which I think you will be

25   instructed on by the Court, will come in substantially

1  this form.

2            Was Strong Trading harmed by Unique Designs'

3  breach of contract?  It is Strong Trading that must

4  prove it was harmed.

5            I would emphasize the name here because the

6  party actually being harmed is what's important here.

7            I appreciate that there were invoices

8  presented throughout this case.  Of course, there is a

9  dispute about whether the invoices are true, whether

10  they're accurate, whether anything is even owed on them.

11            But more on that on the wrong items issue.

12            But the mere existence of these invoices

13  doesn't mean anyone can just come to Court and seek

14  payment on them.  To can harmed, a party must actually

15  be owed something on the invoice.

16            But none of the Strong Jewelry invoices were

17  payable to Strong Trading.  Strong Trading was not

18  harmed.

19            We saw the contract.  The payment

20  instructions in the contract clearly state that an

21  invoice from Strong Jewelry must be paid to Strong

22  Jewelry.

23            There was testimony from Ms. Chu that this

24  contract was between Strong Jewelry and Unique Designs.

25  And here's the testimony.  Is this agreement between

1   Strong Jewelry Hong Kong and Unique Designs?  Yes.

2              The reason Ms. Chu said between Strong

3   Jewelry and Unique Design is because the contract said

4   so.  We just saw a payment instruction that specifically

5   applies to payments between a customer and Strong

6   Jewelry.

7              The contract also identifies two companies:

8   Strong Trading and Chong Chong Jewelry Group.

9              This was not an error or simply repeating

10  the same name in a legal contract.  Chong Chong Jewelry

11  Group was another name, trade name for Strong Jewelry.

12  And you will see a comparison of the invoice with the

13  contract.

14             Everyone from Strong Trading agreed that the

15  document on the right, the invoice, was printed on

16  Strong Jewelry letterhead.  It accurately identifies the

17  shipper and the contact info of the shipper.

18             Importantly, this document had to pass

19  through customs in order to be true and accurate.  The

20  correct company name does appear on the document.  It

21  identifies Strong Jewelry, Chong Chong and the office

22  located in Hong Kong.

23             We also heard the testimony of Tejas Shah,

24  the CEO of Unique Designs.  And here is his testimony.

25  He said he believed the invoices and the goods were

1   coming from the only company he was aware of, Strong

2   Jewelry Hong Kong.

3              We saw the actual invoices.  The invoices

4   were all from Strong Jewelry and, therefore, under the

5   terms of the contract, the invoices were payable to

6   Strong Jewelry.

7              In an effort to save this case, Ms. Chu

8   testified in Court that Strong Trading prepared the

9   invoices and that the payments were actually made

10  ultimately to Strong Trading.

11             But Ms. Chu's testimony in Court was

12  impeached over and over again.  I counted about 15 times

13  I had to play her videotaped deposition to show that her

14  testimony in Court was directly opposite at what she

15  said at her deposition, and that deposition was only two

16  weeks ago.  Ms. Chu's testimony in Court deserves no

17  weight.

18             Equally important is what Ms. Chu actually

19  said at her deposition.  She testified that the invoices

20  at issue in this case were prepared by Strong Jewelry in

21  Hong Kong.  And she had no idea who prepared them.

22             Here's the testimony:

23             "Were you personally involved?

24             "No.

25             "Who was it that prepared the invoices?

1          "Hong Kong."

2          These are her words.  Right.  She is the one

3  saying Hong Kong is the one preparing these invoices.

4          "You don't know who prepared them?

5          "That's correct.

6          "It's the Hong Kong office that actually

7  sends the invoices.  Correct?

8          "Yes."

9          Here it is again.  This is me explaining --

10  asking if this is the process.

11          "The customer approves goods.  Final invoice

12  is prepared by Strong Jewelry in Hong Kong that's

13  shipped with the goods?

14          "Yes."

15          Ms. Chu said this multiple, multiple times,

16  not because of some misunderstanding with my questions

17  but because it was the truth.  No one from Strong

18  Trading was preparing these Strong Jewelry invoices that

19  were coming from Hong Kong.

20          Ms. Chu's testimony was also crystal clear

21  that Strong Jewelry was to be paid on Strong Jewelry

22  invoices.  Strong Jewelry invoice, statement to Strong

23  Jewelry.

24          And here's the testimony.  "According to

25  these payment instructions, and that the payment starts

1   from the actual contract, an invoice from Strong Jewelry

2   has to be paid to Strong Jewelry in Hong Kong?"

3            In Ms. Chu's words, "Yes, because the

4   shipment is also coming from Hong Kong."

5            And here it is again:  "Strong Trading isn't

6   owed any money on an invoice from Strong Jewelry Hong

7   Kong, is it?  It's not."

8            Even in Court, we heard Ms. Chu evade and

9   then finally answer that payments from Unique Designs

10   were made by wire directly to Strong Jewelry's Hong Kong

11   account.  No direct payments were made or due to Strong

12   Trading in California.

13            And here's what's really, really important.

14   I'm hoping everything I say is very important.  But this

15   in particular.

16            Strong Jewelry and Strong Trading are

17   entirely separate companies.

18            They keep being referred to as "our office

19   in Hong Kong."  But they're completely different

20   companies.  They have different bank accounts.  They

21   have separate assets.  They have different employees.

22            You remember Ms. Chu and Mr. Chien refused

23   to say that they worked for Strong Jewelry.  They

24   continued to say, I only work for Strong Trading.

25            Neither company shares debts or liabilities

1    of the other company.  So one company cannot simply swap

2    out for the other.  Money belonging to one company

3    doesn't belong to the other.

4              If Strong Jewelry Hong Kong truly had a

5    dispute with Unique Designs it could have pursued a case

6    here in the U.S.

7              But what it cannot do is have any company

8    that Strong Jewelry's doing business with or is

9    affiliated with running to Court and saying they want

10   payments on Strong Jewelry's invoices.

11             More broader than that, Strong Jewelry Hong

12   Kong cannot use Strong Trading to sue someone in

13   California but then avoid being sued in California

14   because it claims to be a different company with

15   different bank accounts, with different assets.

16             The evidence should leave you no doubt of

17   who the wrong party is here.

18             Again, no invoices from Strong Trading.  No

19   harm to Strong Trading.

20             Let's now turn to the wrong items issue.  As

21   you can imagine, Unique Designs' not receiving the goods

22   it actually ordered is a key component of all the claims

23   in this case.  It's a key component to Strong Trading's

24   breach of contract claim.  It also plays a vital role in

25   Unique Designs' breach of contract claims and breach of

1   warranty claims against Strong Trading.

2            Let's start with Strong Trading's breach of

3   contract claim.  There is one particular element, which

4   I think we read as follows in question format of Strong

5   Trading's claim that the wrong stones issue will apply.

6            That question is:  Did Strong Trading do all

7   or substantially all of the significant things that the

8   Court required to do?

9            This means that Strong Trading must prove it

10  timely delivered goods in the same quality that are

11  generally acceptable; they are fit for the purpose;

12  known to Strong Trading; and then measured up to its

13  promises or facts stated by Strong Trading.

14            Let's take each of those issues in turn.

15  The jewelry that Unique Designs ordered was not the same

16  quality and did not measure up to the promises or facts

17  that Strong Trading was making.  We saw purchase orders

18  that included three-piece emerald sets, ruby sets,

19  sapphire sets.  The purchase orders also included

20  aquamarine.

21            This is what Unique Design actually ordered.

22  The jewelry Unique Designs received was wrong.

23            Kurt Chien, the salesperson assigned to

24  Unique Designs, admitted, for example, that even though

25  Unique Designs was ordering aquamarine since 2018, it

1    was receiving a completely different stone, topaz.  And

2    it was sent topaz from all orders from the beginning of

3    the relationship, all the way through October 2020.

4    Thus, by Mr. Chien's own admission, all of these orders

5    from 2017 through October 2020 were wrong.

6              Strong Trading's response to this wrong

7    stone issue?  It did not consider sending topaz or

8    aquamarine as ordered to be a wrong item.

9              That's why it now claims it wasn't a

10   complaint.  Even though a customer received a completely

11   different stone, Unique Designs -- sorry, Strong Trading

12   did not accept that to be a wrong item.

13             And here's Ms. Chu's testimony.  If the

14   purchase order says aquamarine, they are sent topaz.  Is

15   it improper goods?  She said no.

16             In October 2020 an email from Unique Designs

17   employee specifically identified this issue for

18   Mr. Chien.

19             Mr. Chien admitted that, in fact, we had

20   been sending you light topaz for all previous and

21   pending orders.  And in fact Unique Designs was not

22   actually receiving the goods it had ordered.

23             Similarly, Unique Designs ordered emeralds,

24   sapphire and rubies, but was sent something else.

25             Mr. Shah, the CEO, testified that the glass

1    was sent instead.  And here is his testimony, That there

2    were loads of SKUs which means products that were

3    represented as emerald, sapphire ruby but were supplied

4    as glass fraudulently and without disclosure.

5              Glass is obviously a far, far inferior

6    quality product than emerald, sapphire or ruby.  It is

7    not even a gemstone.

8              Mr. Shah also testified that he had these

9    orders -- ordered these products from Strong for retail

10   to its customers.  And those customers also received

11   glass instead of the emerald, sapphire and ruby that was

12   ordered.

13             These customers included Signet and another

14   company called JTV.

15             During the closing argument of Strong

16   Trading, it emphasized that, you know, Mr. Shah was not

17   present here to testify.  But I will share with you

18   that -- and this is another instruction I think you will

19   receive -- is that Mr. Shah's testimony is entitled to

20   great weight, even greater weight in my opinion than the

21   witnesses from Strong Trading.

22             The instruction you may be given is, The

23   weight of the evidence as to a fact does not necessarily

24   depend on the number of witnesses who testify.  What's

25   really important is who is believable.  And how

1    believable the witnesses were.  How much weight you

2    think their testimony deserves.

3              We also saw multiple inspection reports from

4    a lab testing company that Strong Trading hired showing

5    that the stones were actually treated as glass.

6              One report in particular showed an item

7    testing as glass, where that item was actually purchased

8    from customer whom UVA disclosed as Strong Jewelry.  And

9    that glass item wasn't purchased with the expectation it

10   would be emerald.

11             Mr. Shah also testified that other

12   inspection reports were provided to Unique Designs.

13             And unlike Unique Designs which actually

14   received the wrong items, Strong Trading has no personal

15   knowledge about the items that were actually sent.

16             It took no steps to verify those items.

17   Never inspected the items.  No one from Strong Trading

18   knew what was actually being sent.

19             Strong Trading actually had done no testing

20   on any of the items until five years prior to Unique

21   Designs' complaint.

22             And then suddenly does three inspections

23   after October 2020 when Unique Designs raises these

24   complaints.

25             And the absence of any of these inspections

1   makes it very unlikely -- makes it very unlikely that it

2   actually knew what the items being sent were.

3          We also heard Ms. Chu testify that there

4   should be a list with all the items from Strong's

5   factory in China.  And how easy would it have been to

6   simply send Unique Designs a list of those items,

7   showing exactly what the source of every item was and

8   what it actually was.  But that list was never sent to

9   Unique Designs.

10          It was even requested by Strong Trading as a

11   part of this lawsuit.

12          The last element, the wrong items that

13   Unique Designs received were not fit for its customers

14   specifications.  And those customer specifications

15   Strong Trading knew because they were identified in the

16   purchase orders.

17          Ms. Chen and Mr. Chien and Ms. Chu both

18   testified that they knew about Helzberg and JTV, which

19   is why they bought certain jewelry to inspect.

20          We also saw emails from Unique Designs

21   employees and Strong Trading where they are discussing

22   these wrong stone issues.

23          Referring back to the element I had

24   mentioned earlier that Strong Trading must prove, I

25   think you will also get a jury instruction about what

1   substantial performance means.

2          Because you may look at the element and

3   think, Well, what does it mean for something to

4   substantially perform?  And there's two elements that

5   Strong Trading will need to prove.  They made a good

6   faith effort to comply with the contract, and that

7   Unique Designs actually received what was essential to

8   the contract.

9          Neither of those facts exist here.  The

10  contract here contemplates Unique Designs' placing an

11  order, receiving that order, and then paying for it.

12  Plain and simple.

13         But, as I explained, Unique Designs did not

14  receive its orders and so compliance actually meant

15  sending the items that were ordered.

16         What efforts did Strong Trading make to

17  comply?  It hadn't done any inspection reports in five

18  years.  It was, as Mr. Shah described it, nonresponsive

19  to Unique Designs' complaints about the wrong items, and

20  one fact that Strong Trading has been complaining about

21  and pushing since its opening statement was that a

22  complaint from Unique Designs to Strong Trading about

23  this, quote-unquote, bait and switch issue didn't occur

24  until after January 2021.

25         So according to Strong Training, it actually

1    did nothing after March 2021, because it never got a

2    complaint.

3                But then we saw this email.  This email

4    showed that in fact Mr. Chien had been notified about

5    the wrong stone issue in October 2020.

6                So it is true that Strong Trading made no

7    effort to correct the problem until after March 2021.

8    But that was not because Unique Designs didn't explain,

9    that was because Strong Trading was not acting in good

10   faith to do one of the things, the only thing it was

11   supposed to do; properly fulfill orders.

12               And so what was Strong's response after

13   March 2021?  An offer of credit was made to Unique

14   Designs for about $15,000 for these wrong items.

15   Anything more than that, as you will remember under the

16   return policy, would have required Unique Designs to

17   test each item, which we saw was purchased for about 15

18   to $30, and the cost for testing.

19               The cost for testing for that had been

20   approximately $50.  So under Strong Trading's return

21   policy, refunding the items would have cost more than

22   the item itself.  That was not a real offer.

23               Returning back to the elements for

24   substantial performance.  The second element there is

25   whether Unique Designs received essentially what it had

 1    ordered.

 2              Sending wrong stones in a jewelry -- to a

 3    jewelry company is not getting what you ordered.

 4              Mr. Chien estimated that more than

 5    50 percent of Unique Designs' orders since 2017 were

 6    these three-piece emerald, ruby, aquamarine and topaz

 7    sets.  And by reselling those items to its customers,

 8    Strong Trading knew Unique Designs was going to be

 9    financially impacted, and it knew it was going to be

10    penalized.  Both the magnitude of these wrong stone

11    issues over the period of time that they went on and the

12    consequences of those issues demonstrate that issue was

13    not trivial or unimportant?

14              Strong Trading cannot prove this element

15    either.

16              The wrong items issue proves -- provides

17    great evidence to prove Unique Designs' two claims as

18    well.  First, breach of contract.  There will be two key

19    questions you will be asked on Unique Designs' claims.

20    This is for the breach of contract claim.  I will take

21    the first one first -- the top one first:  Did Strong

22    Trading fail to do something?  I've talked about that at

23    length with the wrong items issue.  And did Unique

24    Designs do all or substantially all of what it was

25    supposed to do?

1              Well, Unique Designs paid over $2 million to
2    Strong Jewelry for the products that it had been
3    supplied.  This necessarily included payments for wrong
4    items that had been sent in the past.
5              And Unique Designs indisputably paid for
6    those.
7              Remember, all the invoices prior to
8    September 2020, even when this wrong stone issue had
9    been ongoing, had been paid.
10             According to Mr. Chien's testimony, the same
11   items had been sent to Unique Designs prior to
12   September 2020 and thereafter.
13             There's a huge price difference between the
14   jewelry actually received and the jewelry Unique Designs
15   was charged for and paid for.
16             That huge price difference over the span of
17   tens of thousands of items that Unique Designs ordered
18   and received demonstrates that Strong Trading fails to
19   comply and by the substantial payment that Unique
20   Designs have already made, it remained incompliant, or
21   at the very least, substantial compliance.
22             Finally, the third -- the other claim that
23   Unique Designs brings, you'll be given an instruction
24   that I think will look something similar to this:  Were
25   the jewelry items of the same quality as those generally

1  acceptable in the trade?  This is the only real question

2  on this claim.

3            The wrong items here do not fit the quality

4  acceptable in this trade.

5            Mr. Shah testified to it.  Mr. Chien even

6  agreed.  And it was because of the complaints about the

7  wrong items not being compliant that Strong Trading,

8  Unique Design, Unique Designs' customers all tested the

9  products.  They wanted to ensure whether or not it was

10  in compliance and learned that it was not.

11            THE COURT:  You have about five.

12            MR. SINGH:  Thank you, Your Honor.

13            Finally, damages.  Strong Trading is not

14  entitled to anything because it is a wrong party to sue

15  on the Strong Jewelry invoices and because the wrong

16  items were sent.

17            Unique Designs on the other hand is entitled

18  to financial harm it was caused which includes the

19  $1.6 million in damages that Mr. Shah testified to, and

20  the $3,000 penalty for sending the wrong items to JTV,

21  another customer.

22            Adding to the weight of Mr. Shah's

23  testimony, it is noteworthy that Mr. Chien did not

24  dispute receiving the penalty memo.  That's how he

25  called it, a penalty memo from JTV.

1           The damages can be recoverable.  And I this

2     is I think an another instruction you'll receive, where

3     the parties knew or could have reasonably foreseen the

4     harm that was likely to occur from the breach of

5     contract.

6           Of course, Unique Designs buying items from

7     Strong Jewelry for another customer and selling those

8     items to a customer that were incorrect was foreseeable

9     to Strong Trading.  Those claims and those -- it is also

10    foreseeable that those people getting -- those customers

11    getting the wrong items would bring a claim not against

12    Strong Trading, not against Strong Jewelry, but the

13    party that actually sold them the goods, which was

14    Unique Designs.

15          And Unique Designs has paid those claims to

16    the tune of over $1.6 million.

17          Thank you all for your time and

18    consideration.  Thank you to the Court.

19          THE COURT:  Thank you, Counsel.

20          Ladies and gentlemen, you've heard the

21    argument of the plaintiff and the defendant.  The

22    plaintiff has rebuttal because they have the burden of

23    proof.  So they go last.

24          Counsel, you got about 12 minutes left.

25          MS. ALPARCE:  Thank you, Your Honor.  I will

1   try to be quick.

2              First of all, let me clarify that in no way

3   did we mean to offend Mr. Tejas' COVID diagnosis or

4   condition.

5              The point in making the fact that Unique

6   Designs is not here with you and hasn't been with you is

7   the fact that Mr. Tejas Shah is only one of 200

8   employees of his company.

9              You heard Mr. Singh refer to emails, emails

10  between Mr. Chien and Vannay Shah -- excuse me, Vannay

11  Singh.  Where is Mr. Singh?  Where are the other

12  employees, the other people who were involved in this

13  process that -- who supposedly complained?  Where are

14  the customers?  No one was here.  That's who we meant by

15  that.

16             And remember, we started this morning

17  talking to you about responsibility and promises.  And

18  how Strong Trading was the one who met their's and how

19  Unique Designs didn't.

20             We also told you that Strong Trading's

21  breach of contract how the evidence shows that Unique

22  Designs breached their contract with Strong Trading and

23  the not the other way around.

24             So the true value of what you need to

25  consider is the $369,441.12 that Unique Designs owns

 1   Strong Trading.

 2              1.6 million 3,000 dollars, what is that?

 3   There was no evidence presented to you by anyone.

 4   Signet wasn't here.  JTV wasn't here.  Where did that

 5   number come from?  Nobody knows.

 6              So Unique Designs' now telling you that

 7   perhaps for the first time that you are hearing that

 8   they don't owe Strong Trading anything, but Strong

 9   Trading is the one that owes them something.

10              We ask you to ignore that's because again

11   that is just smoke and mirrors.  They're trying to add

12   more confusion.

13              He talked about wrong invoices.  The

14   invoices were 100 percent correct.  They came from

15   Strong Trading.  They came from the purchase orders from

16   Unique Designs.

17              If the invoices were wrong, then the

18   purchase orders were wrong because Unique Designs

19   themselves made them to Strong Trading.

20              Mr. Singh elaborated greatly on Ms. Chu's

21   testimony and he cited 15 times where he had to correct

22   her.

23              What he failed to mention was how Ms. Chu

24   told you that she corrected -- or clarified her

25   deposition testimony.  And he didn't even want to show

1    you that because, again, there is no evidence.

2             Mr. Shah also believed that he dealt with

3    Strong Hong Kong.  But he also -- you heard testimony

4    that he didn't know what the transactions were.

5    Repeatedly it was played for you that it said it was the

6    sales, it was the back people.  He didn't know who was

7    dealing with the transactions.

8             Now, he also said that Strong Jewelry

9    prepared the invoices.  There was so much testimony that

10   you heard that it was Kurt Chien, Strong Trading was the

11   one that inputted the information into the intrasystem.

12            So this goes back again to the fact there is

13   no evidence to support Unique Designs.

14            The aquamarine issue.  It is not an issue.

15   It was dealt with.  It was replaced.  Why?  Because of

16   customer service.  That is who Strong Trading is and

17   that is what they do.

18            He makes mention of an offer of $15,000 to

19   resolve this.  I would take $15,000 to resolve 370,000

20   so I can get that money back so I can make payroll so I

21   can pay my bills, so I can pay the factory.

22            So Unique Designs cannot prove that Strong

23   Trading breached the contract.

24            Strong Trading didn't fail to do anything

25   that the contract required them to do.  It is the exact

1    opposite.  They provided the merchandise.  They

2    delivered the merchandise.  But they didn't get paid for

3    the merchandise.  That's how simple this is.

4               The only harm in this case is the harm that

5    Strong Trading has suffered and has continued to suffer

6    at Unique Designs' expense.

7               Again, we ask you to simply find in favor of

8    Strong Trading for the -- its claims of breach of

9    contract and against Unique Designs, and confirm your

10   decision to rule in favor of them in their breach of

11   contract claim and against Strong Trading's breach of

12   contract claim, and against this other implied warranty

13   claim based on the evidence that you heard today and the

14   last few days.  Thank you.

15              THE COURT:  Thank you, Counsel.

16              Okay.  Ladies and gentlemen, now that you

17   have heard the evidence and argument of attorneys, I am

18   going to instruct you on the law that applies to the

19   case, and then we will send you back to deliberate and

20   you can -- you'll the instructions when you get back

21   there to deliberate.

22              Okay.  The instructions are as follows:  Now

23   that you have heard all the evidence and arguments of

24   the attorneys, it is my duty to instruct you on the law

25   that applies to this case.

1           A copy of these instructions will be sent

2     back to the jury room for you to consult during your

3     deliberations.

4           It is your duty to find the facts from all

5     the evidence in this case.  To those facts, you will

6     apply the law that I give to you.  You must follow that

7     law that I give with you, whether you agree with it or

8     not.  And you must not be influenced by any personal

9     likes or dislikes, opinions, prejudice or sympathy.

10          That means you must decide this case solely

11    on the evidence before you.  You recall that you took an

12    oath to do so.

13          Please do not read into these instructions

14    or anything that I may say or do or anything that I have

15    done or said that I have any opinion regarding the

16    evidence.  That is a matter for your verdict -- excuse

17    me, that -- regarding the evidence in what your verdict

18    should be.

19          To help following the instructions, I will

20    give you a very brief summary of the position of both

21    parties.

22          The plaintiff has served a claim for breach

23    of contract.  The plaintiff has the burden of proving

24    that claim.

25          The defendant denies that claim.  And the

1    defendant also asserts a claim against the plaintiff for
2    breach of contract and breach of implied warranty.
3              The defendant has the burden of proof on
4    those counterclaims.
5              The plaintiff denies the defendant's
6    counterclaims.
7              Burden of proof has been defined and is
8    defined as preponderance of evidence.  When a party has
9    a burden of proving a claim by a preponderance of
10   evidence, that means that you must be persuaded by the
11   evidence that the claim is more probably true than not
12   true.
13             You should base your decision on all the
14   evidence regardless of which party presents it.
15             As we have said many times, evidence that
16   you are to consider in this case means -- to consider
17   what the facts are means a sworn testimony of witnesses,
18   and the exhibits that are -- have been admitted into
19   evidence.
20             In reaching your verdict, you may consider
21   only the testimony and exhibits received into evidence.
22   Again, certain things are not evidence, and you may not
23   consider them in deciding what the facts are.
24             I will list those again for you:  Arguments
25   and statements of lawyers are not evidence.  The lawyers

1    are not witnesses.  What they have said in their opening

2    statements or closing arguments or at other times is

3    intended to help you interpret the evidence, but it's

4    not evidence.

5           If the facts as you remember them differ

6    from the way the attorneys have stated them, your memory

7    controls.

8           Question or objections by the lawyers are

9    not evidence.  Attorneys have a duty to their clients to

10   object when they believe a question is improper under

11   the rules of evidence.

12          You should not be influenced by the

13   objection or the Court's ruling on it.

14          Testimony that is excluded or stricken or

15   that you have been instructed to disregard is not

16   evidence and must not be considered by you.

17          In addition, some evidence was received only

18   for a limited purpose.  When I instruct you to consider

19   that evidence only for a limited purpose, you must do

20   so.  And you may not consider that evidence for any

21   other purpose.

22          Anything that you may have seen or heard

23   when the Court is not in session is not evidence.  You

24   are to decide this case solely on the evidence received

25   in this trial.

1         Again, evidence is either direct or

2    circumstantial.  Direct evidence is direct proof of a

3    fact, such as the testimony about a witness -- what a

4    witness saw or heard or did.

5         Circumstantial evidence is proof of one or

6    more facts from which you can find another fact to be

7    true.

8         You should consider both kinds of evidence.

9    The law makes no distinction between the weight to be

10   given to either direct or circumstantial evidence.

11        It is for you to decide how much weight is

12   to be given to any evidence.

13        The rules of evidence that control what can

14   be received -- there are rules of evidence that control

15   what can be received into evidence.

16        When a lawyer asks a question or offers an

17   exhibit into evidence and the lawyer on the other side

18   thinks it is not permitted by the rules of evidence,

19   that lawyer may object.

20        If I overrule the objection, the question

21   may be answered or the exhibit received.

22        If I sustain the objection, the question

23   cannot be answered or the exhibit cannot be received.

24        Whenever I sustain an objection to a

25   question, you must ignore that question and must not

1    guess as to what the answer might have been.

2              Sometimes I may order the evidence be

3    stricken from the record and that you disregard or

4    ignore that evidence.  That means you must -- in

5    deciding this case, you must not consider the stricken

6    evidence for any purpose.

7              In deciding this case, you may have to

8    decide which testimony to believe and which testimony

9    not to believe.

10             You may believe everything that a witness

11   says or part of it or none of it.

12             In considering the testimony of the witness,

13   you may take into account:

14             Number 1, the opportunity and the ability of

15   the witness to see or hear or know things testified to.

16             Number 2, the witness's memory.

17             Number 3, the witness's manner while

18   testifying.

19             Number 4, the witness's interests in the

20   outcome of the case, if any.

21             Number 5, the witness's bias or prejudice,

22   if any.

23             Number 6, whether or not other evidence

24   contradicts the witness's testimony.

25             Number 7, the reasonableness of the

1   witness's testimony in light of all the other evidence.

2              And Number 8, any other factor that bears on

3   believability.

4              The weight of the evidence as to any fact

5   does not necessarily depend on the number of witnesses

6   who have testified.  What is important is how believable

7   the witnesses were and how much weight you think their

8   testimony deserves.

9              In this case, we've had deposition testimony

10  that I instructed you on, but let me do it again.

11             A deposition is sworn testimony of a witness

12  taken before trial.  The witness is placed under oath to

13  tell the truth.  And lawyers for each parties may ask

14  questions.  The questions and answers are recorded.

15  When a person is unavailable to testify at trial, the

16  deposition of that person may be used at trial.

17             Insofar as possible, you should consider the

18  deposition testimony presented to you in Court in lieu

19  of the testimony in a way -- excuse me, in the same way

20  as if that witness had been present here and testifying

21  here in Court.

22             You may -- do not place any significance on

23  the behavior or the tone of the voice of any person

24  reading any questions or answers.

25             Now, the substance of instructions for the

1   substance claims are as follows.

2            To recover damages from Unique Designs for

3   breach of contract, Strong Trading must prove the

4   following:

5            Number 1, Strong Trading and Unique Design

6   entered into a contract.

7            Number 2, that Strong Trading did all or

8   substantially all of the significant things that the

9   contract required it to do.

10            Number 3, that Unique Design failed to do

11   something that the contract required it to do.

12            Number 4, that Strong Trading was harmed.

13            And No. 5, that Unique Designs' breach of

14   contract was a substantial factor in causing Strong

15   Trading's harm.

16            A party can breach or break a contract

17   before performance is required by clearly and positively

18   indicating, by words of conduct that the party will not

19   or cannot meet the requirements of the contract.

20            If Unique Design proves that it would have

21   fulfilled -- excuse me.  That it would have been able to

22   fulfill the terms of the contract, and that Strong

23   Trading clearly and positively indicated by words of

24   conduct that it would not or could not meet the contract

25   requirements, then Strong Trading breached the contract.

1          Unique Designs contends that Strong Trading

2     did not perform all of the things that Strong Trading

3     was required to do under the contract; and, therefore,

4     Unique Design did not have to perform the obligations

5     under the contract.

6          To overcome this contention, Strong Trading

7     must prove both the following; that Strong Trading made

8     a good faith effort to comply with the contract; that

9     Unique Designs received substantially what the contract

10    called for because Strong Trading's failures, if any,

11    were so trivial or unimportant that they could have

12    easily been fixed or paid for.

13          Strong Trading -- if you decide that Strong

14    Trading is proved its claims against Unique Design for

15    breach of contract, you must also decide how much money

16    will reasonably compensate Strong Trading for the harm

17    caused by the breach.  This compensation is called

18    damages.

19          For purposes of such damages to be -- excuse

20    me, the purpose of such damages is to put Strong Trading

21    in as good a position as it would have been if Unique

22    Design had performed it as promised.

23          To recover damages for any harm, Strong

24    Trading must prove that when the contract was made, both

25    parties knew or could reasonably have foreseen that harm

1    is likely to occur in the ordinary course of events as a

2    result of the breach of contract.

3            Strong Trading must also prove the amount of

4    damages according to the following instructions:

5            It does not have to prove the exact amount

6    of damages, you must not speculate though or guess as to

7    awarding damages.

8            Strong Trading's claim for damages for

9    breach of contract under the -- against Unique Design is

10   for not paying for the jewelry purchased.

11           And to recover damages for the breach of

12   contract for payment of money, Strong Trading must prove

13   the amount under the contract.

14           To recover damages from Strong Trading for

15   breach of contract by Unique Design, Unique Design must

16   prove all the following:  That Strong Trading and Unique

17   Design entered into a contract; that Unique Design did

18   all or substantially all of the significant things that

19   the contract required it to do.

20           That Strong Trading failed to do something

21   that the contract required it to do, that Unique Design

22   was harmed; and that Strong Trading's breach of contract

23   was a substantial factor in causing Unique Design's

24   harm.

25           Unique Design claims also that the jewelry

1    items that did not have the quality that a buyer would

2    reasonably expect, this is known as breach of implied

3    warranty.  To establish this claim, Unique Design must

4    prove all the following:

5              Number 1, that Unique Design design bought

6    jewelry items from Strong Trading.

7              Number 2, that at the time of the purchase,

8    Strong Trading was in the business of selling jewelry

9    items to retail buyers.

10             Number 3, that the jewelry items that were

11   not -- excuse me.  That the jewelry items were not of

12   the same quality as those generally accepted in the

13   trade or was not fit for the ordinary purpose of which

14   the goods were used or did not meet up to the promises

15   or facts stated.

16             Number 4, that Unique Design was harmed.

17             And No. 5, that Strong Trading's breach of

18   the implied warranty was a substantial factor causing

19   Unique Designs' harm.

20             If you decide that Unique Design has proved

21   one or both of its claims against Strong Trading, you

22   must decide how much money would reasonably compensate

23   Unique Design for the harm caused by the breach.

24             Unique Design claims damages for lost

25   profits.  To recover damages for lost profits, Unique

 1    Design must prove that it is reasonably certain it would

 2    have earned more profits but for Strong Trading's breach

 3    of the contract.

 4              In deciding the amount of damages for lost

 5    profits, you must first calculate Unique Design's

 6    estimated total profits by determining the gross amount

 7    that it would have received if the contract had been

 8    reformed and then subtracting from that amount the cost

 9    Unique Design would have had if the contract had been

10    performed.

11              Number 2, you next calculate Unique Designs'

12    actual profits by determining the gross amount it

13    actually received, and then subtracting from that amount

14    Unique Designs' actual cost.

15              Number 3, that you subtract Unique Designs'

16    actual profits which you will determine in step 2 from

17    the estimated total profits, which you will determine in

18    step 1, the remaining -- the remaining result amount is

19    Unique Designs' lost profits.

20              You do not have to calculate the amount of

21    the lost profits with mathematical precision, but there

22    must be a reasonable basis for computing those losses.

23              Now, when you begin your deliberations, you

24    will elect one of your members of the jury as a

25    presiding juror.  The presiding juror will preside over

1   your deliberations and serve as a spokesperson for the

2   Court.

3          You should diligently strive to reach an

4   agreement with all the other jurors if you can do so.

5          Your verdict must be unanimous.  Each of you

6   must decide this case for yourselves.  But you should do

7   so only after you have considered all the evidence,

8   discussed it fully with all the other jurors, and

9   listened to their views.

10          It is important that you attempt to reach a

11   unanimous verdict.  But, of course, only if each of you

12   can do so after having made your own conscientious

13   decisions.  Do not be unwilling to change your opinion

14   if the discussion persuades you that you should.

15          But do not come to a decision simply because

16   the other jurors think its right, or change an honest

17   belief about the weight of the effect of the evidence

18   simply to reach a verdict.

19          Because you must -- and we've given you this

20   instruction a couple of times.  But because you must

21   base your verdict only on the evidence received in this

22   case and in these instructions, I'll remind you that you

23   must not be exposed to any other information about the

24   case or to the issues it involves.  Except for

25   discussions in this case with your fellow jurors during

1    your deliberations, do not communicate with anyone else

2    in any way and do not let anyone communicate with you in

3    any way about the merits of this case or anything to do

4    with it.  This includes discussing the case in person,

5    in writing, by phone, via email or any other form of

6    social media.  This applies to communicating -- this

7    applies to communicating with your family, your

8    employer, people involved in this case.

9            If you are asked or approached in any way

10   about your jury service or anything to do about this

11   case, you must report that -- you must respond that you

12   have been ordered not to discuss this matter.  You must

13   report it to the Court.

14           Do not do any type of research, such as

15   considering -- of consulting dictionaries, searching the

16   internet, or using other reference materials.  And do

17   not make any investigation in any way to try to learn

18   about this case outside of the evidence that you have

19   been presented.

20           It is the juror who violates this

21   restrictions jeopardizes the fairness of these

22   proceedings, and a mistrial could result that would

23   require the entire trial process to start over again.

24           If any juror's exposed to any outside

25   information, please notify the Court immediately.

1          If it becomes necessary during your

2    deliberations to communicate with me, you may send a

3    note through the bailiff signed by your presiding juror

4    or anyone or more members of the jury.

5          No member of the jury should ever attempt to

6    communicate with me except by a signed writing.  I will

7    communicate with any member of the jury on anything

8    concerning this case only in writing or here in open

9    Court.

10         If you send out a note with a question on

11   it, I will consult with the parties before answering it.

12   This may take some time.  Remember, last time we had

13   another jury going and we had to hold you up for about

14   an hour.  So it may take an hour or two to respond to

15   any questions that you might have before we get back to

16   you.  But you should remember that during that period of

17   time you can continue your deliberations while waiting

18   for any answer.

19         Remember that you're not to tell anyone,

20   including me how the jury stands numerically or

21   otherwise until you have reached a unanimous verdict or

22   have been discharged.

23         You will -- do not disclose any vote count

24   in any note that you send to the jury -- excuse me, that

25   you send to the Court.

1          The verdict form will be prepared for you.

2     It will be a little different than what you saw here.

3     But a verdict form will be prepared for you.

4          After you have reached a unanimous agreement

5     on the verdict, your presiding juror should complete

6     that verdict form according to your deliberations, sign

7     it, date it, and advise the bailiff that you are ready

8     to return to this courtroom.

9          Copies of these instructions will be sent

10    back to you, so you can read them in detail.

11         So if I misstated anything as I went through

12    these instructions, you can pick it up by just reading

13    the instructions that will be sent back to you.

14         Do you have any questions before we send you

15    back to your deliberations?

16         Okay.

17         Swear in the bailiff, please.

18         THE CLERK:  Please state your name for the

19    record.

20         THE BAILIFF:  John Salas.

21         THE CLERK:  Do you solemnly swear to keep

22    this jury together in some private and convenient place;

23    that you will not permit any person to speak or

24    communicate with them, nor do so yourself, unless by

25    order of the Court or to ask them whether they have

1   agreed upon a verdict and that you will return them into

2   Court when they have so agreed or when ordered by the

3   Court, so help you God?

4               THE BAILIFF:  I will.

5               THE CLERK:  Thank you.

6               Ladies and gentlemen, please take your notes

7   and your belongings and follow the bailiff.

8               All rise.

9               (Out of the presence of the jury.)

10              THE COURT:  Okay.  The record will reflect

11  the jurors have left the courtroom.

12              Counsel, you may have seats.

13              We will prepare the verdict form and get it

14  to you before we send back it back to the jury, see if

15  anybody has any problems with it.

16              I will ask you if you can stay for the first

17  hour anyway, stay in the courtroom here.  Until lunch.

18  That's -- and then after lunch, as long as we get you

19  back in ten minutes or so, you can go wherever you want

20  to go, as long as we can get ahold of you.  Okay?

21              MS. ALPARCE:  Thank you.

22              THE COURT:  Thank you.  We will be in

23  recess.

24              THE CLERK:  All rise.  This Court is in

25  recess.

```
 1                    (JURY DELIBERATING.)

 2                    (NOTE #1) 11:14 A.M.

 3

 4

 5

 6              THE COURT:  Okay.  The record will reflect

 7     that all the jurors are in the courtroom.  I have a note

 8     from the jury foreperson who is -- No. 3.  Juror No. 3.

 9              And the note says, "How can we determine

10     additional damages?"

11              Let me talk to you a little bit.  I'm sure I

12     mentioned this before.  I mentioned to you before, all

13     the evidence you are to consider is the evidence that's

14     come into Court.  We can't add or subtract from that

15     evidence.

16              I will get to your question later.

17              You can't add or subtract from that

18     evidence.  You can't say, Well, nobody mentioned this,

19     so what is this evidence or why -- how -- you can't --

20     you're limited just to the evidence.

21              The same is true for the law.  The law you

22     use to determine the case is in front of you.  We can't

23     add to that law, subtract from that law or anything

24     else.

25              There are instructions that talk about the
```

1    calculation of damages for the -- the plaintiff, if he

2    breaches -- or shows a breach of contract that he's

3    asking for.  It is -- it's in the instructions, asking

4    for payment on the contract.  And defendant's saying, If

5    there is a breach of contract, she's asking for lost

6    profits.  That's all defined in the instructions.

7              Can't give you any further instructions,

8    unfortunately.  It's for the jurors to analyze and

9    interpret the instructions.  But the instructions that

10   you have cover everything.

11             Anything outside of those instructions is

12   not applicable.  Okay.  Okay.

13             We'll send you back in.  If you have any

14   other questions, let me know.

15             **Verdict**

16             THE COURT:  I have a note here that the jury

17   has reached a verdict.  For the foreperson, is that

18   correct?

19             THE JUROR:  Yes.

20             THE COURT:  Directing my question to you:

21   Have you filled out that verdict form entirely?

22             THE JUROR:  Yes.

23             THE COURT:  And you have dated it and signed

24   it?

25             THE JUROR:  Yes.

1          THE COURT:  If you could pass that up to the

2    bailiff, please.

3          THE CLERK:  Thank you.

4          THE COURT:  Okay.  You want to read the

5    verdict, please.

6          THE CLERK:  United States District Court,

7    Central District of California.  Case number 2, CV

8    21-04206 RGK:  Strong Trading, Incorporated, a

9    California corporation, plaintiff, versus Unique

10   Designs, Incorporated, dba SDIL Keron Jewels, a New York

11   corporation, defendant.  Unique Designs, Incorporated

12   dba SDIL Keron Jewels, a New Jersey corporation

13   counterclaimant, versus Strong Trading, Incorporated, a

14   California corporation, Kurt Chien, an individual, and

15   Richard Wei, an individual counter-defendants.

16          Verdict form.

17          We the jury in the above-entitled action

18   find as follows as to Strong Trading, Incorporated

19   versus Unique Designs, Incorporated.

20          Number 1, has Strong Trading proven by a

21   preponderance of the evidence the cause of action for

22   breach of contract?

23          The answer is yes.

24          If you have answered yes to question 1,

25   please answer question 2.

1            Question 2, what are Strong Trading's

2    damages?  Damages in the amount of $369,441.12.

3            As to Unique Designs, Incorporated versus

4    Strong Trading Incorporated.

5            Question 3, has Unique Designs by a

6    preponderance of the evidence -- sorry.  Let me start

7    over.

8            Number 3, has Unique Designs proven by a

9    preponderance of the evidence the cause of action for a

10   breach of contract?

11           The answer is no.

12           Question 4, has Unique Designs proven by a

13   preponderance of the evidence the cause of action for

14   breach of implied warranty and merchantability?

15           The answer is no.

16           If you have answered no to both questions 3

17   and 4, answer no further questions and have the

18   presiding juror sign and date this form.

19           Signed June 17th, 2022.  Signed by the

20   presiding foreperson.

21           THE COURT:  Okay.  Ladies and gentlemen of

22   the jury, is that your verdict, say you one, say you

23   all?

24           COLLECTIVE JURORS:  Yes.

25           THE COURT:  Now what we do, criminal or

1    civil, doesn't make any difference.  Any jury that comes

2    in, we do what we call a polling of the jury.

3              That means I go through each one of you

4    individually and ask you whether or not the verdict just

5    read represents your own individual verdict also.

6              So Juror No. 1?

7              THE JUROR:  Yes.

8              THE COURT:  Juror No. 2?

9              THE JUROR:  Yes.

10             THE COURT:  Juror No. 3?

11             THE JUROR:  Yes.

12             THE COURT:  Juror No. 4?

13             THE JUROR:  Yes.

14             THE COURT:  Juror No. 5?

15             THE JUROR:  Yes.

16             THE COURT:  Juror No. 6?

17             THE JUROR:  Yes.

18             THE COURT:  Juror No. 7?

19             THE JUROR:  Yes.

20             THE COURT:  Juror No. 8?

21             THE JUROR:  Yes.

22             THE COURT:  The Court will then order the

23   verdict to be recorded.

24             Ladies and gentlemen, at this time I absolve

25   you from not talking to anybody about the case.  You can

1    talk to anybody you want about the case now.

2              I want to thank you very much for your

3    participation and the time that you spent in this case

4    and how punctual you were.  That helped quite a bit.

5              After the case is over, if you're outside

6    and you see one of the attorneys or the parties, you can

7    talk to them.  You can talk to anybody about the case.

8              Now, caveat.  If you do talk with the

9    attorneys or one of the parties in this case, you should

10   never divulge what somebody else, other jurors have

11   said, while they were in the jury room.  That's sacred.

12   What jurors talk about themselves, they should know that

13   they're safe to talk without it being exposed later.

14             So you can talk about what you thought about

15   the case; I thought this was weak, I thought that was

16   weak.  Don't talk about what another juror told you in

17   the jury room.  Okay.

18             Also, if you don't want to talk with anybody

19   about the case -- and most jurors, I got to confess

20   don't want to talk to anybody.  They just want to go

21   home.  The bailiff will make sure that he can

22   accompany -- you can leave the building without talking

23   to anybody at all.  Okay.

24             With that, I want to thank you very much.

25             Do you have any questions before we release

1   you?

2                Thank you very much for your participation.

3   You are excused at this time.

4                THE CLERK:  All rise.

5                (Out of the presence of the jury.)

6                THE COURT:  You can have seats.  I did want

7   to reiterate what I said I think it was yesterday.

8                On your Rule 50 motions, to make the motion

9   anytime before 4 o'clock on Tuesday the 21st.

10               And any opposition or reply to that is due

11  on Friday the 24th by noontime.

12               So if anybody wants to make those motions,

13  that's available to you.

14               Again, I want to thank both attorneys for

15  acting as officers of the Court.  I appreciate it.

16  Thank you very much.

17               MR. YORK:  Thank you, Your Honor.

18               MR. SINGH:  Thank you.

19               THE COURT:  The prevailing party to provide

20  the judgment.

21               (PROCEEDINGS CONCLUDED.)

22

23

24

25

```
 1                    CERTIFICATE OF REPORTER

 2

 3   COUNTY OF LOS ANGELES      )

 4                              )  SS.

 5   STATE OF CALIFORNIA        )

 6

 7   I, SHERI S. KLEEGER, OFFICIAL COURT REPORTER, IN AND FOR

 8   THE UNITED STATES DISTRICT COURT FOR THE CENTRAL

 9   DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT

10   TO SECTION 753, TITLE 28, UNITED STATES CODE, THE

11   FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE

12   STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE

13   ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE

14   FORMAT IS IN CONFORMANCE WITH THE REGULATIONS OF THE

15   JUDICIAL CONFERENCE OF THE UNITED STATES.

16   AUGUST 31, 2022

17

18   /S/_____

19   SHERI S. KLEEGER, CSR

20   FEDERAL OFFICIAL COURT REPORTER

21

22

23

24

25
```

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## $

**$15,000** [3] - 27:14, 34:18, 34:19
**$3,000** [1] - 30:20
**$30** [1] - 27:18
**$369,441.12** [5] - 7:5, 12:3, 13:6, 32:25, 55:2
**$50** [1] - 27:20

## /

**/S** [1] - 59:18

## 1

**1** [8] - 40:14, 42:5, 45:5, 46:18, 52:2, 54:20, 54:24, 56:6
**1.6** [3] - 30:19, 31:16, 33:2
**100** [1] - 33:14
**10340** [1] - 1:23
**11:14** [1] - 52:2
**12** [1] - 31:24
**13** [2] - 4:22, 10:1
**15** [3] - 17:12, 27:17, 33:21
**17** [2] - 1:17, 3:1
**17th** [1] - 55:19
**18** [1] - 11:11

## 2

**2** [10] - 29:1, 40:16, 42:7, 45:7, 46:11, 46:16, 54:7, 54:25, 55:1, 56:8
**200** [2] - 5:3, 32:7
**2017** [2] - 22:5, 28:5
**2018** [2] - 9:16, 21:25
**2020** [7] - 22:3, 22:5, 22:16, 24:23, 27:5, 29:8, 29:12
**2021** [5] - 9:16, 26:24, 27:1, 27:7, 27:13
**2022** [4] - 1:17, 3:1, 55:19, 59:16
**21-04206** [2] - 1:8, 54:8
**213)894-6604** [1] - 1:25
**21st** [1] - 58:9
**24th** [1] - 58:11
**28** [1] - 59:10

## 3

**3** [10] - 40:17, 42:10,

45:10, 46:15, 52:8, 55:5, 55:8, 55:16, 56:10
**3,000** [1] - 33:2
**31** [1] - 59:16
**312** [1] - 1:24
**35** [1] - 11:8
**370,000** [1] - 34:19

## 4

**4** [8] - 1:16, 40:19, 42:12, 45:16, 55:12, 55:17, 56:12, 58:9
**402** [1] - 1:24

## 5

**5** [4] - 40:21, 42:13, 45:17, 56:14
**50** [2] - 28:5, 58:8

## 6

**6** [2] - 40:23, 56:16

## 7

**7** [2] - 40:25, 56:18
**70,000** [1] - 9:17
**753** [1] - 59:10

## 8

**8** [2] - 41:2, 56:20

## 9

**90012** [1] - 1:24

## A

**A.M** [3] - 1:18, 3:2, 52:2
**ability** [1] - 40:14
**able** [1] - 42:21
**ABOVE** [1] - 59:13
**above-entitled** [1] - 54:17
**ABOVE-ENTITLED** [1] - 59:13
**absence** [1] - 24:25
**absolve** [1] - 56:24
**accept** [1] - 22:12
**acceptable** [3] - 21:11, 30:1, 30:4
**accepted** [1] - 45:12
**accompany** [1] - 57:22
**according** [5] - 18:24, 26:25, 29:10, 44:4,

50:6
**account** [2] - 19:11, 40:13
**accounts** [2] - 19:20, 20:15
**accurate** [2] - 15:10, 16:19
**accurately** [1] - 16:16
**acting** [2] - 27:9, 58:15
**action** [4] - 54:17, 54:21, 55:9, 55:13
**acts** [1] - 13:22
**actual** [5] - 17:3, 19:1, 46:12, 46:14, 46:16
**add** [4] - 33:11, 52:14, 52:17, 52:23
**adding** [1] - 30:22
**addition** [1] - 38:17
**additional** [1] - 52:10
**address** [1] - 8:12
**admission** [1] - 22:4
**admitted** [4] - 9:9, 21:24, 22:19, 37:18
**advise** [1] - 50:7
**affiliated** [1] - 20:9
**afford** [1] - 10:20
**ago** [1] - 17:16
**agree** [4] - 5:16, 7:17, 13:25, 36:7
**agreed** [5] - 7:25, 16:14, 30:6, 51:1, 51:2
**agreement** [3] - 15:25, 47:4, 50:4
**ahead** [2] - 12:18, 13:16
**ahold** [1] - 51:20
**al** [1] - 1:10
**Alparce** [1] - 4:6
**ALPARCE** [6] - 3:24, 4:2, 4:4, 12:19, 31:25, 51:21
**AMERICA** [1] - 1:1
**amount** [11] - 44:3, 44:5, 44:13, 46:4, 46:6, 46:8, 46:12, 46:13, 46:18, 46:20, 55:2
**Amy** [1] - 6:12
**analyze** [3] - 5:11, 53:8
**AND** [3] - 59:7, 59:11, 59:13
**ANGELES** [4] - 1:18, 1:24, 3:1, 59:3
**answer** [13] - 5:19, 6:15, 6:17, 6:25, 12:12, 19:9, 40:1, 49:18, 54:23, 54:25,

55:11, 55:15, 55:17
**answered** [4] - 39:21, 39:23, 54:24, 55:16
**answering** [1] - 49:11
**answers** [2] - 13:3, 41:14, 41:24
**anytime** [1] - 58:9
**anyway** [1] - 51:17
**APARCE** [1] - 2:7
**appear** [1] - 16:20
**APPEARANCES** [1] - 2:4
**Apple** [1] - 13:14
**applicable** [1] - 53:12
**applied** [1] - 14:16
**applies** [6] - 16:5, 35:18, 35:25, 48:6, 48:7
**apply** [2] - 21:5, 36:6
**appreciate** [3] - 13:8, 15:7, 58:15
**appreciated** [1] - 14:8
**approached** [1] - 48:9
**approves** [1] - 18:11
**aquamarine** [6] - 21:20, 21:25, 22:8, 22:14, 28:6, 34:14
**argue** [1] - 3:12
**argument** [4] - 12:4, 23:15, 31:21, 35:17
**arguments** [5] - 35:23, 37:24, 38:2
**arrived** [1] - 14:4
**asserts** [1] - 37:1
**assets** [2] - 19:21, 20:15
**assigned** [1] - 21:23
**assist** [1] - 5:9
**AT** [2] - 2:7, 2:7
**attempt** [3] - 7:20, 47:10, 49:5
**attention** [1] - 4:20
**ATTORNEY** [2] - 2:7, 2:7
**attorneys** [9] - 3:12, 5:8, 35:17, 35:24, 38:6, 38:9, 57:6, 57:9, 58:14
**AUGUST** [1] - 59:16
**available** [1] - 58:13
**avoid** [1] - 20:13
**awarding** [1] - 44:7
**aware** [1] - 17:1

## B

**bailiff** [6] - 49:3, 50:7, 50:17, 51:7, 54:2, 57:21
**BAILIFF** [2] - 50:20,

51:4
**bait** [3] - 9:6, 11:14, 26:23
**bank** [2] - 19:20, 20:15
**base** [2] - 37:13, 47:21
**based** [1] - 35:13
**basis** [1] - 46:22
**bears** [1] - 41:2
**beat** [1] - 8:1
**becomes** [1] - 49:1
**begin** [3] - 13:13, 13:14, 46:23
**beginning** [2] - 5:14, 22:2
**behalf** [2] - 13:7, 13:20
**BEHALF** [2] - 2:5, 2:9
**behavior** [1] - 41:23
**belief** [1] - 47:17
**believability** [1] - 41:3
**believable** [3] - 23:25, 24:1, 41:6
**belong** [1] - 20:3
**belonging** [1] - 20:2
**belongings** [1] - 51:7
**best** [1] - 4:11
**between** [12] - 7:24, 8:5, 10:25, 13:23, 15:24, 15:25, 16:2, 16:5, 29:13, 32:10, 39:9
**bias** [1] - 40:21
**bills** [2] - 10:6, 34:21
**bit** [3] - 12:9, 52:11, 57:4
**bought** [2] - 25:19, 45:5
**box** [1] - 3:7
**breach** [37] - 5:20, 13:2, 14:21, 15:3, 20:24, 20:25, 21:2, 28:18, 28:20, 31:4, 32:21, 35:8, 35:10, 35:11, 36:22, 37:2, 42:3, 42:13, 42:16, 43:15, 43:17, 44:2, 44:9, 44:11, 44:15, 44:22, 45:2, 45:17, 45:23, 46:2, 53:2, 53:5, 54:22, 55:10, 55:14
**breached** [4] - 12:23, 32:22, 34:23, 42:25
**breaches** [1] - 53:2
**break** [1] - 42:16
**brief** [1] - 36:20
**bring** [1] - 31:11
**brings** [1] - 29:23
**broader** [1] - 20:11
**brought** [1] - 14:20

**building** [1] - 57:22
**burden** [5] - 31:22,
36:23, 37:3, 37:7,
37:9
**business** [7] - 10:1,
10:5, 10:6, 10:14,
20:8, 45:8
**buyer** [1] - 45:1
**buyers** [1] - 45:9
**buying** [1] - 31:6
**BY** [2] - 2:6, 2:10

## C

**calculate** [3] - 46:5,
46:11, 46:20
**calculation** [1] - 53:1
**CALIFORNIA** [6] - 1:2,
1:18, 1:24, 3:1, 59:5,
59:9
**California** [7] - 8:13,
19:12, 20:13, 54:7,
54:9, 54:14
**cannot** [8] - 20:1,
20:7, 20:12, 28:14,
34:22, 39:23, 42:19
**case** [48] - 3:11, 3:12,
4:19, 4:25, 5:14,
7:10, 7:11, 11:16,
12:6, 13:21, 14:7,
14:9, 15:8, 17:7,
17:20, 20:5, 20:23,
35:4, 35:19, 35:25,
36:5, 36:10, 37:16,
38:24, 40:5, 40:7,
40:20, 41:9, 47:6,
47:22, 47:24, 47:25,
48:3, 48:4, 48:8,
48:11, 48:18, 49:8,
52:22, 54:7, 56:25,
57:1, 57:3, 57:5,
57:7, 57:9, 57:15,
57:19
**cases** [1] - 4:12
**caused** [3] - 30:18,
43:17, 45:23
**causing** [3] - 42:14,
44:23, 45:18
**caveat** [1] - 57:8
**CENTRAL** [2] - 1:2,
59:8
**Central** [1] - 54:7
**CEO** [3] - 6:5, 16:24,
22:25
**certain** [3] - 25:19,
37:22, 46:1
**cERTIFICATE** [1] -
59:1
**CERTIFIED** [1] - 1:7
**CERTIFY** [1] - 59:9

**chance** [1] - 3:12
**change** [2] - 47:13,
47:16
**charged** [1] - 29:15
**Chen** [1] - 25:17
**Chien** [17] - 6:12, 6:18,
8:10, 9:15, 19:22,
21:23, 22:18, 22:19,
25:17, 27:4, 28:4,
30:5, 30:23, 32:10,
34:10, 54:14
**Chien's** [3] - 11:10,
22:4, 29:10
**China** [1] - 25:5
**choice** [2] - 9:25, 11:5
**Chong** [6] - 16:8,
16:10, 16:21
**chose** [1] - 10:3
**Chu** [11] - 6:12, 15:23,
16:2, 17:7, 17:18,
18:15, 19:8, 19:22,
25:3, 25:17, 33:23
**Chu's** [6] - 17:11,
17:16, 18:20, 19:3,
22:13, 33:20
**circumstantial** [3] -
39:2, 39:5, 39:10
**cited** [1] - 33:21
**civic** [1] - 14:7
**civil** [1] - 56:1
**claim** [20] - 9:6, 14:22,
20:24, 21:3, 21:5,
28:20, 29:22, 30:2,
31:11, 35:11, 35:12,
35:13, 36:22, 36:24,
36:25, 37:1, 37:9,
37:11, 44:8, 45:3
**claims** [15] - 20:14,
20:22, 20:25, 21:1,
22:9, 28:17, 28:19,
31:9, 31:15, 35:8,
42:1, 43:14, 44:25,
45:21, 45:24
**clarified** [1] - 33:24
**clarify** [1] - 32:2
**clear** [1] - 18:20
**clearly** [3] - 15:20,
42:17, 42:23
**CLERK** [7] - 50:18,
50:21, 51:5, 51:24,
54:3, 54:6, 58:4
**client** [1] - 13:20
**clients** [1] - 38:9
**closing** [2] - 23:15,
38:2
**CODE** [1] - 59:10
**colleague** [1] - 5:17
**colleagues** [2] - 4:5,
13:7
**COLLECTIVE** [1] -

55:24
**colored** [1] - 6:23
**coming** [4] - 8:11,
17:1, 18:19, 19:4
**communicate** [6] -
48:1, 48:2, 49:2,
49:6, 49:7, 50:24
**communicating** [2] -
48:6, 48:7
**communications** [2] -
8:9, 8:15
**companies** [3] - 16:7,
19:17, 19:20
**company** [15] - 4:22,
5:3, 14:3, 16:20,
17:1, 19:25, 20:1,
20:2, 20:7, 20:14,
23:14, 24:4, 28:3,
32:8
**comparison** [1] -
16:12
**compelling** [1] - 9:12
**compensate** [2] -
43:16, 45:22
**compensation** [1] -
43:17
**complained** [1] -
32:13
**complaining** [1] -
26:20
**complaint** [9] - 6:21,
9:18, 11:13, 11:14,
22:10, 24:21, 26:22,
27:2
**complaints** [3] -
24:24, 26:19, 30:6
**complete** [2] - 12:7,
50:5
**completely** [4] -
14:22, 19:19, 22:1,
22:10
**compliance** [3] -
26:14, 29:21, 30:10
**compliant** [1] - 30:7
**comply** [4] - 26:6,
26:17, 29:19, 43:8
**component** [2] -
20:22, 20:23
**computer** [1] - 13:15
**computing** [1] - 46:22
**concerning** [1] - 49:8
**CONCLUDED** [1] -
58:21
**conclusion** [1] - 4:12
**condition** [1] - 32:4
**conduct** [2] - 42:18,
42:24
**CONFERENCE** [1] -
59:15
**confess** [1] - 57:19

**confirm** [1] - 35:9
**confirmed** [1] - 6:2
**CONFORMANCE** [1] -
59:14
**confuse** [2] - 7:16,
7:20
**confusing** [3] - 7:4,
7:18, 9:5
**confusion** [2] - 7:15,
33:12
**connect** [1] - 13:14
**conscientious** [1] -
47:12
**consequences** [1] -
28:12
**consider** [12] - 22:7,
32:25, 37:16, 37:20,
37:23, 38:18, 38:20,
39:8, 40:5, 41:17,
52:13
**consideration** [2] -
3:18, 31:18
**considered** [2] -
38:16, 47:7
**considering** [2] -
40:12, 48:15
**consult** [2] - 36:2,
49:11
**consulting** [1] - 48:15
**contact** [1] - 16:17
**contemplates** [1] -
26:10
**contends** [1] - 43:1
**contention** [1] - 43:6
**continue** [2] - 10:20,
49:17
**continued** [3] - 10:22,
19:24, 35:5
**contract** [74] - 5:20,
5:21, 7:24, 8:6, 8:20,
8:23, 8:24, 12:14,
12:21, 12:23, 12:25,
13:2, 14:22, 15:3,
15:19, 15:20, 15:24,
16:3, 16:7, 16:10,
16:13, 17:5, 19:1,
20:24, 20:25, 21:3,
26:6, 26:8, 26:10,
28:18, 28:20, 31:5,
32:21, 32:22, 34:23,
34:25, 35:9, 35:11,
35:12, 36:23, 37:2,
42:3, 42:6, 42:9,
42:11, 42:14, 42:16,
42:19, 42:22, 42:24,
42:25, 43:3, 43:5,
43:8, 43:9, 43:15,
43:24, 44:2, 44:9,
44:12, 44:13, 44:15,
44:17, 44:19, 44:21,

44:22, 46:3, 46:7,
46:9, 53:2, 53:4,
53:5, 54:22, 55:10
**contracting** [1] - 14:3
**contradicts** [1] - 40:24
**control** [2] - 39:13,
39:14
**controls** [3] - 3:15,
3:21, 38:7
**convenient** [1] - 50:22
**convince** [1] - 7:16
**copies** [1] - 50:9
**copy** [1] - 36:1
**COPY** [1] - 1:7
**corporation** [4] - 54:9,
54:11, 54:12, 54:14
**CORRECT** [1] - 59:11
**correct** [7] - 16:20,
18:5, 18:7, 27:7,
33:14, 33:21, 53:18
**corrected** [1] - 33:24
**cost** [5] - 27:18, 27:19,
27:21, 46:8, 46:14
**counsel** [7] - 3:23,
3:25, 12:15, 13:12,
13:25, 31:24, 51:12
**COUNSEL** [1] - 2:4
**Counsel** [4] - 13:11,
13:19, 31:19, 35:15
**count** [1] - 49:23
**counted** [1] - 17:12
**counter** [2] - 4:7,
54:15
**counter-defendant** [1]
- 4:7
**counter-defendants**
[1] - 54:15
**counterclaimant** [1] -
54:13
**counterclaims** [2] -
37:4, 37:6
**COUNTY** [1] - 59:3
**couple** [3] - 7:19,
14:11, 47:20
**course** [5] - 14:12,
15:8, 31:6, 44:1,
47:11
**Court** [27] - 13:8,
14:25, 15:13, 17:8,
17:11, 17:14, 17:16,
19:8, 20:9, 21:8,
31:18, 38:23, 41:18,
41:21, 47:2, 48:13,
48:25, 49:9, 49:25,
50:25, 51:2, 51:3,
51:24, 52:14, 54:6,
56:22, 58:15
**COURT** [34] - 1:1,
1:23, 3:5, 3:25, 4:3,
12:15, 13:11, 13:16,

30:11, 31:19, 35:15, 51:10, 51:22, 52:6, 53:16, 53:20, 53:23, 54:1, 54:4, 55:21, 55:25, 56:8, 56:10, 56:12, 56:14, 56:16, 56:18, 56:20, 56:22, 58:6, 58:19, 59:7, 59:8, 59:20
**Court's** [1] - 38:13
**courtroom** [4] - 50:8, 51:11, 51:17, 52:7
**cover** [1] - 53:10
**COVID** [2] - 14:4, 32:3
**Crabbe** [1] - 4:6
**CRABBE** [1] - 2:7
**created** [3] - 9:7, 9:17, 11:13
**credit** [1] - 27:13
**criminal** [1] - 55:25
**crystal** [1] - 18:20
**CSR** [2] - 1:23, 59:19
**customer** [12] - 6:1, 10:25, 16:5, 18:11, 22:10, 24:8, 25:14, 30:21, 31:7, 31:8, 34:16
**customers** [11] - 6:24, 11:11, 11:22, 23:10, 23:13, 25:13, 28:7, 30:8, 31:10, 32:14
**customs** [1] - 16:19
**CV** [2] - 1:8, 54:7

**D**

**damages** [22] - 13:5, 30:13, 30:19, 31:1, 42:2, 43:18, 43:19, 43:20, 43:23, 44:4, 44:6, 44:7, 44:8, 44:11, 44:14, 45:24, 45:25, 46:4, 52:10, 53:1, 55:2
**dare** [1] - 9:21
**date** [2] - 50:7, 55:18
**dated** [1] - 53:23
**DAY** [1] - 1:16
**days** [6] - 4:18, 6:12, 7:19, 11:8, 14:11, 35:14
**dba** [2] - 54:10, 54:12
**dealing** [1] - 34:7
**dealt** [2] - 34:2, 34:15
**debt** [1] - 11:3
**debts** [1] - 19:25
**decide** [9] - 36:10, 38:24, 39:11, 40:8, 43:13, 43:15, 45:20, 45:22, 47:6

**decided** [1] - 10:9
**deciding** [4] - 37:23, 40:5, 40:7, 46:4
**decision** [3] - 35:10, 37:13, 47:15
**decisions** [1] - 47:13
**defend** [1] - 7:13
**DEFENDANT** [1] - 2:9
**defendant** [6] - 4:7, 31:21, 36:25, 37:1, 37:3, 54:11
**defendant's** [2] - 37:5, 53:4
**defendants** [1] - 54:15
**DEFENDANTS** [1] - 1:12
**defined** [3] - 37:7, 37:8, 53:6
**deliberate** [2] - 35:19, 35:21
**deliberating** [1] - 12:5
**DELIBERATING** [1] - 52:1
**deliberations** [8] - 36:3, 46:23, 47:1, 48:1, 49:2, 49:17, 50:6, 50:15
**delivered** [2] - 21:10, 35:2
**delivery** [1] - 6:2
**demonstrate** [1] - 28:12
**demonstrates** [1] - 29:18
**denies** [2] - 36:25, 37:5
**deposition** [9] - 17:13, 17:15, 17:19, 33:25, 41:9, 41:11, 41:16, 41:18
**described** [1] - 26:18
**deserves** [4] - 4:20, 17:16, 24:2, 41:8
**design** [1] - 45:5
**Design** [27] - 9:20, 10:11, 11:8, 16:3, 21:21, 30:8, 42:5, 42:10, 42:20, 43:4, 43:14, 43:22, 44:9, 44:15, 44:17, 44:21, 44:23, 45:3, 45:5, 45:16, 45:20, 45:23, 45:24, 46:1, 46:9
**Design's** [2] - 44:23, 46:5
**DESIGNS** [1] - 1:10
**Designs** [98] - 5:2, 5:4, 5:21, 5:23, 5:24, 6:9, 6:13, 6:16, 6:19, 7:2, 7:7, 7:8, 7:13, 7:25,

8:5, 8:6, 8:7, 8:14, 8:16, 8:21, 8:22, 8:25, 9:9, 9:16, 9:22, 9:24, 10:2, 10:16, 10:20, 10:22, 11:2, 11:6, 11:15, 11:21, 11:23, 12:2, 12:13, 12:22, 12:24, 15:24, 16:1, 16:24, 19:9, 20:5, 21:15, 21:22, 21:24, 21:25, 22:11, 22:16, 22:21, 22:23, 24:12, 24:13, 24:23, 25:6, 25:9, 25:13, 25:20, 26:7, 26:13, 26:22, 27:8, 27:14, 27:16, 27:25, 28:8, 28:24, 29:1, 29:5, 29:11, 29:14, 29:17, 29:20, 29:23, 30:17, 31:6, 31:14, 31:15, 32:6, 32:19, 32:22, 32:25, 33:16, 33:18, 34:13, 34:22, 35:9, 42:2, 43:1, 43:9, 54:10, 54:11, 54:19, 55:3, 55:5, 55:8, 55:12
**Designs'** [22] - 6:4, 9:6, 13:1, 14:17, 15:2, 20:21, 20:25, 24:21, 26:10, 26:19, 28:5, 28:17, 28:19, 30:8, 33:6, 35:6, 42:13, 45:19, 46:11, 46:14, 46:15, 46:19
**detail** [1] - 50:10
**determine** [6] - 3:10, 4:16, 46:16, 46:17, 52:9, 52:22
**determining** [2] - 46:6, 46:12
**diagnosis** [1] - 32:3
**dictionaries** [1] - 48:15
**differ** [1] - 38:5
**difference** [3] - 29:13, 29:16, 56:1
**different** [11] - 12:9, 12:17, 19:19, 19:20, 19:21, 20:14, 20:15, 22:1, 22:11, 50:2
**differently** [1] - 3:18
**differs** [1] - 3:14
**diligently** [1] - 47:3
**direct** [5] - 9:11, 39:1, 39:2, 39:10
**directing** [1] - 53:20
**directly** [2] - 17:14, 19:10

**disagree** [1] - 14:1
**discharged** [1] - 49:22
**disclose** [1] - 49:23
**disclosed** [1] - 24:8
**disclosure** [1] - 23:4
**discuss** [1] - 48:12
**discussed** [1] - 47:8
**discussing** [2] - 25:21, 48:4
**discussion** [1] - 47:14
**discussions** [1] - 47:25
**dislikes** [1] - 36:9
**dispute** [4] - 13:23, 15:9, 20:5, 30:24
**disregard** [2] - 38:15, 40:3
**distinction** [1] - 39:9
**District** [2] - 54:6, 54:7
**DISTRICT** [5] - 1:1, 1:2, 1:4, 59:8, 59:9
**DIVISION** [1] - 1:2
**divulge** [1] - 57:10
**DO** [1] - 59:9
**document** [4] - 5:25, 16:15, 16:18, 16:20
**documents** [3] - 5:10, 12:6, 12:7
**dollars** [1] - 33:2
**done** [4] - 4:11, 24:19, 26:17, 36:15
**doubt** [1] - 20:16
**draw** [1] - 9:22
**due** [2] - 19:11, 58:10
**during** [5] - 23:15, 36:2, 47:25, 49:1, 49:16
**duty** [4] - 14:7, 35:24, 36:4, 38:9

**E**

**earned** [1] - 46:2
**easier** [1] - 7:3
**easily** [1] - 43:12
**easy** [1] - 25:5
**effect** [1] - 47:17
**effort** [4] - 17:7, 26:6, 27:7, 43:8
**efforts** [1] - 26:16
**either** [3] - 28:15, 39:1, 39:10
**elaborated** [1] - 33:20
**elect** [1] - 46:24
**element** [7] - 14:24, 21:3, 25:12, 25:23, 26:2, 27:24, 28:14
**elements** [3] - 14:21, 26:4, 27:23
**email** [7] - 8:9, 8:11,

8:12, 22:16, 27:3, 48:5
**emails** [3] - 25:20, 32:9
**emerald** [6] - 21:18, 23:3, 23:6, 23:11, 24:10, 28:6
**emeralds** [1] - 22:23
**emphasize** [1] - 15:5
**emphasized** [1] - 23:16
**employee** [2] - 8:10, 22:17
**employees** [7] - 4:23, 10:1, 10:7, 19:21, 25:21, 32:8, 32:12
**employer** [1] - 48:8
**energy** [1] - 13:21
**ensure** [1] - 30:9
**enter** [2] - 5:21, 12:13
**entered** [2] - 42:6, 44:17
**entire** [1] - 48:23
**entirely** [2] - 19:17, 53:21
**ENTITLED** [1] - 59:13
**entitled** [4] - 23:19, 30:14, 30:17, 54:17
**equally** [1] - 17:18
**error** [1] - 16:9
**ESQUIRE** [3] - 2:6, 2:10, 2:11
**essential** [1] - 26:7
**essentially** [2] - 9:21, 27:25
**establish** [1] - 45:3
**estimated** [3] - 28:4, 46:6, 46:17
**et** [1] - 1:10
**evade** [1] - 19:8
**events** [1] - 44:1
**evidence** [75] - 3:10, 3:13, 3:22, 4:10, 5:11, 9:8, 9:13, 11:24, 14:13, 14:15, 14:19, 20:16, 23:23, 28:17, 32:21, 33:3, 34:1, 34:13, 35:13, 35:17, 35:23, 36:5, 36:11, 36:16, 36:17, 37:8, 37:10, 37:11, 37:14, 37:15, 37:19, 37:21, 37:22, 37:25, 38:3, 38:4, 38:9, 38:11, 38:16, 38:17, 38:19, 38:20, 38:23, 38:24, 39:1, 39:2, 39:5, 39:8, 39:10, 39:12, 39:13, 39:14, 39:15, 39:17, 39:18,

40:2, 40:4, 40:6, 40:23, 41:1, 41:4, 47:7, 47:17, 47:21, 48:18, 52:13, 52:15, 52:18, 52:19, 52:20, 54:21, 55:6, 55:9, 55:13
**exact** [2] - 34:25, 44:5
**exactly** [1] - 25:7
**example** [1] - 21:24
**except** [2] - 47:24, 49:6
**excluded** [1] - 38:14
**excuse** [7] - 32:10, 36:16, 41:19, 42:21, 43:19, 45:11, 49:24
**excused** [1] - 58:3
**excuses** [1] - 7:14
**exhibit** [3] - 39:17, 39:21, 39:23
**exhibits** [2] - 37:18, 37:21
**exist** [1] - 26:9
**existence** [1] - 15:12
**expect** [1] - 45:2
**expectation** [1] - 24:9
**expense** [1] - 35:6
**expert** [1] - 11:19
**experts** [1] - 11:19
**explain** [2] - 14:15, 27:8
**explained** [1] - 26:13
**explaining** [1] - 18:9
**exposed** [3] - 47:23, 48:24, 57:13

## F

**fact** [13] - 6:4, 7:17, 22:19, 22:21, 23:23, 26:20, 27:4, 32:5, 32:7, 34:12, 39:3, 39:6, 41:4
**factor** [4] - 41:2, 42:14, 44:23, 45:18
**factory** [5] - 11:1, 11:3, 11:4, 25:5, 34:21
**facts** [12] - 3:10, 5:11, 21:13, 21:16, 26:9, 36:4, 36:5, 37:17, 37:23, 38:5, 39:6, 45:15
**fail** [3] - 12:24, 28:22, 34:24
**failed** [1] - 33:23, 42:10, 44:20
**fails** [2] - 8:25, 29:18
**failures** [1] - 43:10
**fairly** [1] - 5:12

**fairness** [1] - 48:21
**faith** [3] - 26:6, 27:10, 43:8
**family** [3] - 4:22, 10:1, 48:7
**family-owned** [1] - 10:1
**family-run** [1] - 4:22
**far** [2] - 23:5
**favor** [4] - 13:10, 14:17, 35:7, 35:10
**FEDERAL** [1] - 1:23, 59:20
**fellow** [1] - 47:25
**few** [3] - 4:18, 12:6, 35:14
**file** [1] - 9:2
**filed** [1] - 8:16
**fill** [1] - 12:11
**filled** [1] - 53:21
**final** [2] - 4:12, 18:11
**finally** [7] - 4:10, 9:22, 10:18, 11:8, 19:9, 19:22, 30:13
**financial** [1] - 30:18
**financially** [1] - 28:9
**first** [11] - 5:17, 5:19, 11:9, 28:18, 28:21, 32:2, 33:7, 46:5, 51:16
**fit** [4] - 21:11, 25:13, 30:3, 45:13
**five** [5] - 13:3, 24:20, 26:17, 30:11
**fixed** [1] - 43:12
**flying** [1] - 14:4
**focused** [1] - 7:21
**follow** [3] - 8:25, 36:6, 51:7
**following** [6] - 36:19, 42:4, 43:7, 44:4, 44:16, 45:4
**follows** [5] - 12:13, 21:4, 35:22, 42:1, 54:18
**FOR** [2] - 59:7, 59:8
**FOREGOING** [1] - 59:11
**foreperson** [3] - 52:8, 53:17, 55:20
**foreseeable** [2] - 31:8, 31:10
**foreseen** [2] - 31:3, 43:25
**form** [10] - 12:16, 15:1, 48:5, 50:1, 50:3, 50:6, 51:13, 53:21, 54:16, 55:18
**FORMAT** [1] - 59:14
**format** [1] - 21:4

**forward** [1] - 13:9
**four** [2] - 5:19, 6:16
**fraudulently** [1] - 23:4
**free** [2] - 9:21, 10:21
**Friday** [2] - 1:17, 58:11
**FRIDAY** [1] - 3:1
**front** [1] - 52:22
**fulfill** [3] - 5:16, 27:11, 42:22
**fulfilled** [2] - 7:7, 42:21
**fully** [1] - 47:8

## G

**GARY** [1] - 1:4
**gemstone** [1] - 23:7
**generally** [3] - 21:11, 29:25, 45:12
**gentlemen** [6] - 3:8, 31:20, 35:16, 51:6, 55:21, 56:24
**GERALD** [1] - 2:11
**given** [8] - 4:17, 5:24, 12:6, 23:22, 29:23, 39:10, 39:12, 47:19
**glass** [8] - 9:7, 22:25, 23:4, 23:5, 23:11, 24:5, 24:7, 24:9
**God** [1] - 51:3
**goods** [17] - 5:22, 5:23, 6:3, 6:6, 6:7, 6:14, 6:17, 7:1, 16:25, 18:11, 18:13, 20:21, 21:10, 22:15, 22:22, 31:13, 45:14
**great** [2] - 23:20, 28:17
**greater** [1] - 23:20
**greatly** [1] - 33:20
**gross** [2] - 46:6, 46:12
**ground** [1] - 8:1
**Group** [2] - 16:8, 16:11
**group** [1] - 5:6
**guess** [2] - 40:1, 44:6

## H

**hand** [1] - 30:17
**hard** [1] - 4:16
**harm** [1] - 20:19, 30:18, 31:4, 35:4, 42:15, 43:16, 43:23, 43:25, 44:24, 45:19, 45:23
**harmed** [9] - 13:1, 15:2, 15:4, 15:6, 15:14, 15:18, 42:12,

44:22, 45:16
**hear** [4] - 3:17, 12:4, 13:18, 40:15
**heard** [21] - 3:9, 6:4, 6:11, 6:18, 7:18, 8:14, 9:5, 14:10, 14:13, 16:23, 19:8, 25:3, 31:20, 32:9, 34:3, 34:10, 35:13, 35:17, 35:23, 38:22, 39:4
**hearing** [1] - 33:7
**HELD** [1] - 59:12
**help** [4] - 5:11, 36:19, 38:3, 51:3
**helped** [1] - 57:4
**Helzberg** [1] - 25:18
**HEREBY** [1] - 59:9
**hiding** [1] - 9:14
**highlighted** [1] - 5:13
**highlighting** [1] - 14:2
**hired** [1] - 24:4
**hold** [1] - 49:13
**home** [1] - 57:21
**honest** [1] - 47:16
**Hong** [2] - 7:25, 8:2, 8:3, 8:15, 8:18, 16:1, 16:22, 17:2, 17:21, 18:1, 18:3, 18:6, 18:12, 18:19, 19:2, 19:4, 19:6, 19:10, 19:19, 20:4, 20:11, 34:3
**Honor** [7] - 3:24, 4:2, 12:19, 13:13, 30:12, 31:25, 58:17
**HONORABLE** [1] - 1:4
**honors** [2] - 10:15
**hopefully** [1] - 13:19
**hoping** [1] - 19:14
**hour** [3] - 49:14, 51:17
**huge** [2] - 29:13, 29:16
**humbled** [1] - 4:16
**hundreds** [2] - 6:23, 11:11

## I

**idea** [1] - 17:21
**identified** [3] - 8:8, 22:17, 25:15
**identifies** [3] - 16:7, 16:16, 16:21
**identifying** [1] - 5:10
**ignore** [3] - 33:10, 39:25, 40:4
**imagine** [1] - 20:21
**immediately** [1] - 48:25

**impacted** [1] - 28:9
**impeached** [1] - 17:12
**implied** [5] - 35:12, 37:2, 45:2, 45:18, 55:14
**importance** [1] - 5:13
**important** [11] - 4:14, 5:6, 14:6, 14:10, 15:6, 17:18, 19:13, 19:14, 23:25, 41:6, 47:10
**importantly** [2] - 6:13, 16:18
**improper** [2] - 22:15, 38:10
**IN** [3] - 59:7, 59:12, 59:14
**INC** [2] - 1:6, 1:10
**included** [4] - 21:18, 21:19, 23:13, 29:3
**includes** [2] - 30:18, 48:4
**including** [1] - 49:20
**incompliant** [1] - 29:20
**Incorporated** [8] - 54:8, 54:10, 54:11, 54:13, 54:18, 54:19, 55:3, 55:4
**incorrect** [1] - 31:8
**incredibly** [2] - 14:6
**incurs** [1] - 11:3
**indicated** [1] - 42:23
**indicating** [1] - 42:18
**indisputably** [1] - 29:5
**individual** [3] - 54:14, 54:15, 56:5
**individually** [1] - 56:4
**inferior** [1] - 23:5
**influenced** [2] - 36:8, 38:12
**info** [1] - 16:17
**information** [3] - 34:11, 47:23, 48:25
**inputted** [1] - 34:11
**insist** [1] - 9:22
**insofar** [1] - 41:17
**inspect** [1] - 25:19
**inspected** [1] - 24:17
**inspection** [3] - 24:3, 24:12, 26:17
**inspections** [2] - 24:22, 24:25
**instead** [4] - 7:2, 9:7, 23:1, 23:11
**instruct** [3] - 35:18, 35:24, 38:18
**instructed** [3] - 14:25, 38:15, 41:10
**instruction** [7] - 16:4,

23:18, 23:22, 25:25, 29:23, 31:2, 47:20
**instructions** [21] - 8:25, 15:20, 18:25, 35:20, 35:22, 36:1, 36:13, 36:19, 41:25, 44:4, 47:22, 50:9, 50:12, 50:13, 52:25, 53:3, 53:6, 53:7, 53:9, 53:11
**intended** [1] - 38:3
**interest** [1] - 13:23
**interesting** [1] - 7:18
**interests** [1] - 40:19
**internet** [1] - 48:16
**interpret** [2] - 38:3, 53:9
**interpreted** [1] - 3:20
**intrasystem** [1] - 34:11
**introduce** [1] - 4:5
**investigation** [1] - 48:17
**invoice** [8] - 15:15, 15:21, 16:12, 16:15, 18:11, 18:22, 19:1, 19:6
**invoices** [25] - 8:23, 11:7, 15:7, 15:9, 15:12, 15:16, 16:25, 17:3, 17:5, 17:9, 17:19, 17:25, 18:3, 18:7, 18:18, 18:22, 20:10, 20:18, 29:7, 30:15, 33:13, 33:14, 33:17, 34:9
**involved** [3] - 17:23, 32:12, 48:8
**involves** [1] - 47:24
**IS** [2] - 59:11, 59:14
**issue** [20] - 11:9, 11:25, 12:1, 14:12, 14:23, 15:11, 17:20, 20:20, 21:5, 22:7, 22:17, 26:23, 27:5, 28:12, 28:16, 28:23, 29:8, 34:14
**issues** [9] - 14:10, 14:14, 14:16, 14:19, 21:14, 25:22, 28:11, 28:12, 47:24
**item** [8] - 22:8, 22:12, 24:6, 24:7, 24:9, 25:7, 27:17, 27:22
**items** [35] - 14:12, 15:11, 20:20, 24:14, 24:15, 24:16, 24:17, 24:20, 25:2, 25:4, 25:6, 25:12, 26:15, 26:19, 27:14, 27:21,

28:7, 28:16, 28:23, 29:4, 29:11, 29:17, 29:25, 30:3, 30:7, 30:16, 30:20, 31:6, 31:8, 31:11, 45:1, 45:6, 45:9, 45:10, 45:11
**itself** [2] - 11:11, 27:22

## J

**January** [1] - 26:24
**jeopardizes** [1] - 48:21
**Jersey** [2] - 14:5, 54:12
**Jessica** [1] - 4:6
**JESSICA** [1] - 2:7
**jewelry** [15] - 6:20, 21:15, 21:22, 25:19, 28:2, 28:3, 29:14, 29:25, 44:10, 44:25, 45:6, 45:8, 45:10, 45:11
**Jewelry** [38] - 7:25, 8:15, 8:17, 15:16, 15:21, 15:22, 15:24, 16:1, 16:3, 16:6, 16:8, 16:10, 16:11, 16:16, 16:21, 17:2, 17:4, 17:6, 17:20, 18:12, 18:18, 18:21, 18:22, 18:23, 19:1, 19:2, 19:6, 19:16, 19:23, 20:4, 20:11, 24:8, 29:2, 30:15, 31:7, 31:12, 34:8
**Jewelry's** [3] - 19:10, 20:8, 20:10
**Jewels** [2] - 54:10, 54:12
**job** [1] - 5:8
**John** [1] - 50:20
**JTV** [5] - 23:14, 25:18, 30:20, 30:25, 33:4
**JUDGE** [1] - 1:4
**judge** [1] - 12:10
**judgment** [1] - 58:20
**JUDICIAL** [1] - 59:15
**JUNE** [2] - 1:17, 3:1
**June** [1] - 55:19
**juror** [8] - 46:25, 48:20, 49:3, 50:5, 52:8, 55:18, 57:16
**JUROR** [11] - 53:19, 53:22, 53:25, 56:7, 56:9, 56:11, 56:13, 56:15, 56:17, 56:19, 56:21
**Juror** [8] - 56:6, 56:8,

56:10, 56:12, 56:14, 56:16, 56:18, 56:20
**juror's** [1] - 48:24
**jurors** [12] - 3:6, 13:21, 47:4, 47:8, 47:16, 47:25, 51:11, 52:7, 53:8, 57:10, 57:12, 57:19
**JURORS** [1] - 55:24
**jury** [25] - 3:7, 12:5, 12:12, 25:25, 36:2, 46:24, 48:10, 49:4, 49:5, 49:7, 49:13, 49:20, 49:24, 50:22, 51:9, 51:14, 52:8, 53:16, 54:17, 55:22, 56:1, 56:2, 57:11, 57:17, 59:13
**JURY** [1] - 52:1
**justice** [1] - 13:24

## K

**Kathleen** [1] - 4:5
**KATHLEEN** [1] - 2:7
**keep** [3] - 4:9, 19:18, 50:21
**Keron** [2] - 54:10, 54:12
**key** [4] - 5:10, 20:22, 20:23, 28:18
**kinds** [1] - 39:8
**KLAUSNER** [1] - 1:4
**KLEEGER** [3] - 1:23, 59:7, 59:19
**knowledge** [1] - 24:15
**known** [2] - 21:12, 45:2
**knows** [1] - 33:5
**Kong** [22] - 8:1, 8:2, 8:3, 8:16, 8:18, 16:1, 16:22, 17:2, 17:21, 18:1, 18:3, 18:6, 18:12, 18:19, 19:2, 19:4, 19:7, 19:10, 19:19, 20:4, 20:12, 34:3
**Kurt** [6] - 6:12, 8:10, 21:23, 34:10, 54:14

## L

**lab** [1] - 24:4
**ladies** [6] - 3:8, 31:20, 35:16, 51:6, 55:21, 56:24
**last** [7] - 4:18, 7:19, 13:18, 25:12, 31:23, 35:14, 49:12
**LAW** [2] - 2:7, 2:7

**law** [10] - 14:16, 35:18, 35:24, 36:6, 36:7, 39:9, 52:21, 52:23
**lawsuit** [4] - 8:17, 9:2, 14:20, 25:11
**lawyer** [3] - 39:16, 39:17, 39:19
**lawyers** [4] - 37:25, 38:8, 41:13
**leads** [1] - 14:16
**learn** [1] - 48:17
**learned** [1] - 30:10
**least** [1] - 29:21
**leave** [2] - 20:16, 57:22
**left** [3] - 9:24, 31:24, 51:11
**legal** [1] - 16:10
**length** [1] - 28:23
**letterhead** [1] - 16:16
**liabilities** [1] - 19:25
**lieu** [1] - 41:18
**light** [2] - 22:20, 41:1
**likely** [2] - 31:4, 44:1
**limited** [3] - 38:18, 38:19, 52:20
**line** [1] - 9:22
**list** [4] - 25:4, 25:6, 25:8, 37:24
**listen** [1] - 3:20
**listened** [1] - 47:9
**live** [1] - 10:2
**loads** [1] - 23:2
**located** [1] - 16:22
**look** [6] - 9:15, 12:7, 12:17, 13:9, 26:2, 29:24
**LOS** [4] - 1:18, 1:24, 3:1, 59:3
**losses** [1] - 46:22
**lost** [6] - 45:24, 45:25, 46:4, 46:19, 46:21, 53:5
**lunch** [2] - 51:17, 51:18

## M

**magnitude** [1] - 28:10
**manner** [1] - 40:17
**March** [3] - 27:1, 27:7, 27:13
**materials** [1] - 46:21
**mathematical** [1] - 46:21
**matter** [4] - 7:3, 7:4, 36:16, 48:12
**MATTER** [1] - 59:13
**mean** [4] - 9:21, 15:13, 26:3, 32:3

**means** [9] - 21:9, 23:2, 26:1, 36:10, 37:10, 37:16, 37:17, 40:4, 56:3
**meant** [2] - 26:14, 32:14
**measure** [1] - 21:16
**measured** [1] - 21:12
**media** [1] - 48:6
**meet** [4] - 10:10, 42:19, 42:24, 45:14
**member** [2] - 49:5, 49:7
**members** [2] - 46:24, 49:4
**memo** [2] - 30:24, 30:25
**memory** [4] - 3:15, 3:21, 38:6, 40:16
**mention** [2] - 33:23, 34:18
**mentioned** [5] - 5:15, 25:24, 52:12, 52:18
**merchandise** [5] - 9:20, 10:21, 35:1, 35:2, 35:3
**merchantability** [1] - 55:14
**mere** [1] - 15:12
**merits** [1] - 48:3
**message** [1] - 8:19
**met** [1] - 32:18
**Michael** [1] - 4:6
**MICHAEL** [1] - 2:6
**middle** [1] - 10:25
**might** [2] - 40:1, 49:15
**million** [4] - 29:1, 30:19, 31:16, 33:2
**minutes** [2] - 31:24, 51:19
**mirrors** [3] - 7:14, 7:15, 33:11
**mislead** [1] - 3:17
**misstated** [1] - 50:11
**mistrial** [1] - 48:22
**misunderstanding** [1] - 18:16
**money** [9] - 5:1, 8:22, 10:23, 19:6, 20:2, 34:20, 43:15, 44:12, 45:22
**months** [1] - 10:18
**morning** [2] - 4:4, 13:17, 32:16
**most** [3] - 5:6, 9:12, 57:19
**motion** [1] - 58:8
**motions** [2] - 58:8, 58:12
**MR** [5] - 13:13, 13:17,

30:12, 58:17, 58:18
**MS** [6] - 3:24, 4:2, 4:4, 12:19, 31:25, 51:21
**multiple** [4] - 6:11, 18:15, 24:3
**must** [37] - 14:1, 15:3, 15:14, 15:21, 21:9, 25:24, 36:6, 36:8, 36:10, 37:10, 38:16, 38:19, 39:25, 40:4, 40:5, 42:3, 43:7, 43:15, 43:24, 44:3, 44:6, 44:12, 44:15, 45:3, 45:22, 46:1, 46:5, 46:22, 47:5, 47:6, 47:19, 47:20, 47:23, 48:11, 48:12

**N**

**name** [7] - 4:5, 15:5, 16:10, 16:11, 16:20, 50:18
**necessarily** [3] - 23:23, 29:3, 41:5
**necessary** [1] - 49:1
**need** [3] - 13:14, 26:5, 32:24
**nerve** [1] - 9:20
**never** [5] - 8:15, 24:17, 25:8, 27:1, 57:10
**New** [3] - 14:4, 54:10, 54:12
**next** [1] - 46:11
**nobody** [2] - 33:5, 52:18
**none** [2] - 15:16, 40:11
**nonetheless** [1] - 12:11
**nonresponsive** [1] - 26:18
**noontime** [1] - 58:11
**NORTH** [1] - 1:24
**NOTE** [1] - 52:2
**note** [6] - 49:3, 49:10, 49:24, 52:7, 52:9, 53:16
**notes** [1] - 51:6
**noteworthy** [1] - 30:23
**nothing** [1] - 27:1
**notified** [1] - 27:4
**notify** [1] - 48:25
**Number** [7] - 40:21, 40:23, 40:25, 41:2, 42:7, 42:10, 42:12
**number** [21] - 5:24, 5:25, 6:1, 8:12, 23:24, 33:5, 40:14, 40:16, 40:17, 40:19,

41:5, 42:5, 45:5, 45:7, 45:10, 45:16, 46:11, 46:15, 54:7, 54:20, 55:8
**numerically** [1] - 49:20

**O**

**o'clock** [1] - 58:9
**oath** [2] - 36:12, 41:12
**object** [2] - 38:10, 39:19
**objection** [4] - 38:13, 39:20, 39:22, 39:24
**objections** [1] - 38:8
**obligations** [6] - 5:14, 5:15, 7:7, 10:10, 10:15, 43:4
**obvious** [1] - 8:16
**obviously** [1] - 23:5
**occur** [3] - 26:23, 31:4, 44:1
**October** [5] - 22:3, 22:5, 22:16, 24:23, 27:5
**OF** [13] - 1:1, 1:2, 1:17, 2:4, 2:5, 2:9, 59:1, 59:3, 59:5, 59:9, 59:11, 59:14, 59:15
**offend** [1] - 32:3
**offensive** [1] - 14:2
**offer** [3] - 27:13, 27:22, 34:18
**offers** [1] - 39:16
**office** [5] - 8:2, 8:3, 16:21, 18:6, 19:18
**officers** [1] - 58:15
**OFFICIAL** [3] - 1:23, 59:7, 59:20
**OHN** [1] - 2:11
**ON** [2] - 2:5, 2:9
**one** [33] - 3:16, 5:3, 5:20, 6:21, 11:13, 11:14, 12:7, 14:21, 18:2, 18:3, 18:17, 20:1, 20:2, 21:3, 24:6, 24:17, 26:20, 27:10, 28:21, 32:7, 32:14, 32:18, 33:9, 34:11, 39:5, 45:21, 46:24, 55:22, 56:3, 57:6, 57:9
**ongoing** [1] - 29:9
**open** [2] - 8:23, 49:8
**opening** [3] - 7:21, 26:21, 38:1
**opinion** [3] - 23:20, 36:15, 47:13

**opinions** [1] - 36:9
**opportunity** [1] - 40:14
**opposing** [1] - 13:25
**opposite** [2] - 17:14, 35:1
**opposition** [1] - 58:10
**order** [8] - 11:3, 16:19, 22:14, 26:11, 40:2, 50:25, 56:22
**ordered** [15] - 9:17, 20:22, 21:15, 21:21, 22:8, 22:22, 22:23, 23:9, 23:12, 26:15, 28:1, 28:3, 29:17, 48:12, 51:2
**ordering** [1] - 21:25
**orders** [19] - 6:22, 8:8, 10:23, 11:6, 11:12, 21:17, 21:19, 22:2, 22:4, 22:21, 23:9, 25:16, 26:14, 27:11, 28:5, 33:15, 33:18
**ordinary** [2] - 44:1, 45:13
**otherwise** [1] - 49:21
**outcome** [1] - 40:20
**outset** [1] - 14:9
**outside** [4] - 48:18, 48:24, 53:11, 57:5
**overcome** [1] - 43:6
**overrule** [1] - 39:20
**owe** [1] - 33:8
**owed** [8] - 5:2, 8:22, 9:23, 10:11, 12:3, 15:10, 15:15, 19:6
**owes** [1] - 33:9
**own** [6] - 6:5, 8:7, 22:4, 47:12, 56:5
**owned** [1] - 10:1
**owns** [1] - 32:25

**P**

**PAGE** [1] - 59:13
**paid** [11] - 10:19, 15:21, 18:21, 19:2, 29:1, 29:5, 29:9, 29:15, 31:15, 35:2, 43:12
**part** [4] - 7:21, 13:24, 25:11, 40:11
**participation** [2] - 57:3, 58:2
**particular** [4] - 4:1, 19:15, 21:3, 24:6
**parties** [9] - 8:20, 13:23, 31:3, 36:21, 41:13, 43:25, 49:11, 57:6, 57:9

**party** [15] - 7:22, 7:23, 14:12, 14:20, 14:22, 15:6, 15:14, 20:17, 30:14, 31:13, 37:8, 37:14, 42:16, 42:18, 58:19
**pass** [2] - 16:18, 54:1
**past** [2] - 14:11, 29:4
**patient** [1] - 10:18
**patiently** [2] - 4:19, 4:24
**pay** [11] - 6:16, 7:1, 7:5, 8:25, 9:22, 10:6, 10:11, 11:4, 12:2, 34:21
**payable** [2] - 15:17, 17:5
**paying** [3] - 10:23, 26:11, 44:10
**payment** [9] - 8:25, 15:14, 15:19, 16:4, 18:25, 29:19, 44:12, 53:4
**payments** [6] - 16:5, 17:9, 19:9, 19:11, 20:10, 29:3
**payroll** [2] - 10:6, 34:20
**penalized** [1] - 28:10
**penalty** [3] - 30:20, 30:24, 30:25
**pending** [1] - 22:21
**people** [6] - 3:17, 5:3, 31:10, 32:12, 34:6, 48:8
**percent** [2] - 28:5, 33:14
**perform** [3] - 26:4, 43:2, 43:4
**performance** [3] - 26:1, 27:24, 42:17
**performed** [2] - 43:22, 46:10
**perhaps** [2] - 9:5, 33:7
**period** [4] - 6:19, 11:25, 28:11, 49:16
**permit** [1] - 50:23
**permitted** [1] - 39:18
**person** [6] - 10:25, 41:15, 41:16, 41:23, 48:4, 50:23
**personal** [2] - 24:14, 36:8
**personally** [2] - 14:1, 17:23
**persuaded** [1] - 37:10
**persuades** [1] - 47:14
**PH** [1] - 1:25
**phone** [1] - 48:5
**pick** [1] - 50:12

**piece** [2] - 21:18, 28:6
**pieces** [3] - 6:20, 6:23, 9:17
**place** [3] - 10:22, 41:22, 50:22
**placed** [1] - 41:12
**places** [1] - 11:2
**placing** [1] - 26:10
**plain** [1] - 26:12
**plaintiff** [9] - 4:7, 31:21, 31:22, 36:22, 36:23, 37:1, 37:5, 53:1, 54:9
**PLAINTIFF** [2] - 1:8, 2:5
**play** [1] - 17:13
**Play** [1] - 13:14
**played** [1] - 34:5
**plays** [1] - 20:24
**point** [3] - 3:9, 4:10, 32:5
**policy** [2] - 27:16, 27:21
**polling** [1] - 56:2
**position** [2] - 36:20, 43:21
**positively** [2] - 42:17, 42:23
**possession** [1] - 9:10
**possible** [2] - 4:9, 41:17
**precision** [1] - 46:21
**prejudice** [2] - 36:9, 40:21
**prepare** [1] - 51:13
**prepared** [9] - 17:8, 17:20, 17:21, 17:25, 18:4, 18:12, 34:9, 50:1, 50:3
**preparing** [2] - 18:3, 18:18
**preponderance** [6] - 37:8, 37:9, 54:21, 55:6, 55:9, 55:13
**presence** [2] - 51:9, 58:5
**present** [4] - 4:11, 9:13, 23:17, 41:20
**presented** [4] - 15:8, 33:3, 41:18, 48:19
**presents** [1] - 37:14
**preside** [1] - 46:25
**president** [1] - 14:2
**PRESIDING** [1] - 1:4
**presiding** [6] - 46:25, 49:3, 50:5, 55:18, 55:20
**pretty** [1] - 8:1
**prevailing** [1] - 58:19
**previous** [1] - 22:20

price [2] - 29:13, 29:16
printed [1] - 16:15
private [1] - 50:22
problem [1] - 27:7
problems [1] - 51:15
PROCEEDINGS [3] - 1:17, 58:21, 59:12
proceedings [1] - 48:22
process [3] - 18:10, 32:13, 48:23
processing [1] - 11:6
product [1] - 23:6
products [4] - 23:2, 23:9, 29:2, 30:9
profits [11] - 45:25, 46:2, 46:5, 46:6, 46:12, 46:16, 46:17, 46:19, 46:21, 53:6
promise [1] - 7:7
promised [1] - 43:22
promises [7] - 5:14, 5:16, 10:16, 21:13, 21:16, 32:17, 45:14
proof [5] - 31:23, 37:3, 37:7, 39:2, 39:5
properly [1] - 27:11
prove [17] - 12:22, 15:4, 21:9, 25:24, 26:5, 28:14, 28:17, 34:22, 42:3, 43:7, 43:24, 44:3, 44:5, 44:12, 44:16, 45:4, 46:1
proved [2] - 43:14, 45:20
proven [3] - 54:20, 55:8, 55:12
proves [3] - 14:19, 28:16, 42:20
provide [1] - 58:19
provided [2] - 24:12, 35:1
provides [1] - 28:16
providing [2] - 9:7, 9:20
proving [3] - 14:13, 36:23, 37:9
punctual [1] - 57:4
purchase [11] - 5:22, 6:22, 8:7, 8:8, 21:17, 21:19, 22:14, 25:16, 33:15, 33:18, 45:7
purchased [5] - 6:19, 24:7, 24:9, 27:17, 44:10
purpose [7] - 21:11, 38:18, 38:19, 38:21, 40:6, 43:20, 45:13

purposes [1] - 43:19
PURSUANT [1] - 59:9
pursuant [1] - 8:23
pursued [1] - 20:5
pushing [1] - 26:21
put [2] - 10:19, 43:20

Q

quality [7] - 21:10, 21:16, 23:6, 29:25, 30:3, 45:1, 45:12
questions [15] - 5:10, 5:20, 12:12, 13:3, 18:16, 28:19, 41:14, 41:24, 49:15, 50:14, 53:14, 55:16, 55:17, 57:25
quick [1] - 32:1
quite [2] - 5:2, 57:4
quote [1] - 26:23
quote-unquote [1] - 26:23

R

raises [1] - 24:23
reach [4] - 4:12, 47:3, 47:10, 47:18
reached [3] - 49:21, 50:4, 53:17
reaching [1] - 37:20
read [5] - 21:4, 36:13, 50:10, 54:4, 56:5
reading [2] - 41:24, 50:12
ready [2] - 3:23, 50:7
real [2] - 27:22, 30:1
really [7] - 7:11, 9:25, 10:14, 14:10, 19:13, 23:25
reason [1] - 16:2
reasonable [1] - 46:22
reasonableness [1] - 40:25
reasonably [6] - 31:3, 43:16, 43:25, 45:2, 45:22, 46:1
reasons [1] - 7:3
rebuttal [1] - 31:22
receive [4] - 5:23, 23:19, 26:14, 31:2
received [22] - 6:3, 6:5, 21:22, 22:10, 23:10, 24:14, 25:13, 26:7, 27:25, 29:14, 29:18, 37:21, 38:17, 38:24, 39:14, 39:15, 39:21, 39:23, 43:9, 46:7, 46:13, 47:21

receiving [5] - 20:21, 22:1, 22:22, 26:11, 30:24
recess [2] - 51:23, 51:25
record [6] - 3:5, 11:10, 40:3, 50:19, 51:10, 52:6
recorded [2] - 41:14, 56:23
recover [5] - 42:2, 42:23, 44:11, 44:14, 45:25
recoverable [1] - 31:1
refer [1] - 32:9
reference [1] - 48:16
referred [1] - 19:18
referring [1] - 25:23
reflect [3] - 3:5, 51:10, 52:6
reformed [1] - 46:8
refunding [1] - 27:21
refuse [1] - 9:11
refused [1] - 19:22
regarding [2] - 36:15, 36:17
regardless [1] - 37:14
REGULATIONS [1] - 59:14
reiterate [1] - 58:7
relationship [1] - 22:3
release [1] - 57:25
remained [1] - 29:20
remaining [2] - 46:18
remember [13] - 3:13, 3:14, 9:25, 10:22, 10:24, 19:22, 27:15, 29:7, 32:16, 38:5, 49:12, 49:16, 49:19
remind [1] - 47:22
rendering [1] - 13:9
repeatedly [1] - 34:5
repeating [1] - 16:9
replaced [1] - 34:15
reply [1] - 58:10
report [3] - 24:6, 48:11, 48:13
REPORTED [1] - 59:12
REPORTER [4] - 1:23, 59:1, 59:7, 59:20
REPORTER'S [1] - 1:17
reports [4] - 11:20, 24:3, 24:12, 26:17
represent [1] - 4:7
representative [1] - 5:4
represented [1] - 23:3
represents [1] - 56:5

requested [1] - 25:10
require [1] - 48:23
required [11] - 12:21, 12:25, 21:8, 27:16, 34:25, 42:9, 42:11, 42:17, 43:3, 44:19, 44:21
requirements [2] - 42:19, 42:25
research [1] - 48:14
reselling [1] - 28:7
resolve [3] - 13:22, 34:19
respect [1] - 4:20
respective [1] - 3:6
respond [2] - 48:11, 49:14
response [3] - 13:6, 22:6, 27:12
responsibilities [1] - 10:3
responsibility [1] - 32:17
rest [2] - 6:7, 10:8
restrictions [1] - 48:21
rests [1] - 14:22
result [4] - 14:3, 44:2, 46:18, 48:22
retail [2] - 23:9, 45:9
return [7] - 6:10, 6:14, 9:11, 27:16, 27:20, 50:8, 51:1
returning [1] - 27:23
review [1] - 12:6
RGK [2] - 1:8, 54:8
Richard [1] - 54:15
rise [3] - 51:8, 51:24, 58:4
role [2] - 5:7, 20:24
room [4] - 12:5, 36:2, 57:11, 57:17
ROOM [1] - 1:24
rubies [1] - 22:24
ruby [5] - 21:18, 23:3, 23:6, 23:11, 28:6
rule [1] - 35:10
Rule [1] - 58:8
rules [4] - 38:11, 39:13, 39:14, 39:18
ruling [1] - 38:13
run [1] - 4:22
running [1] - 20:9

S

sacred [1] - 57:11
sacrifice [1] - 4:17
safe [1] - 57:13
Salas [1] - 50:20
sales [1] - 34:6

salesperson [1] - 21:23
sapphire [5] - 21:19, 22:24, 23:3, 23:6, 23:11
sat [1] - 4:19
save [1] - 17:7
saw [12] - 8:7, 8:9, 15:19, 16:4, 17:3, 21:17, 24:3, 25:20, 27:3, 27:17, 39:4, 50:2
SDIL [2] - 54:10, 54:12
searching [1] - 48:15
seats [3] - 3:6, 51:12, 58:6
second [1] - 27:24
SECTION [1] - 59:10
see [6] - 3:17, 7:6, 16:12, 40:15, 51:14, 57:6
seek [1] - 15:13
selfless [1] - 13:22
seller [1] - 8:9
selling [2] - 31:7, 45:8
send [9] - 25:6, 35:19, 49:2, 49:10, 49:24, 49:25, 50:14, 51:14, 53:13
sending [5] - 22:7, 22:20, 26:15, 28:2, 30:20
sends [1] - 18:7
sent [14] - 22:2, 22:14, 22:24, 23:1, 24:15, 24:18, 25:2, 25:8, 29:4, 29:11, 30:16, 36:1, 50:9, 50:13
separate [2] - 19:17, 19:21
September [2] - 29:8, 29:12
seriously [2] - 4:25, 5:1
serve [1] - 47:1
served [1] - 36:22
service [2] - 34:16, 48:10
SESSION [2] - 1:18, 3:2
session [1] - 38:23
sets [4] - 21:18, 21:19, 28:7
Shah [14] - 6:5, 6:13, 14:2, 16:23, 22:25, 23:8, 23:16, 24:11, 26:18, 30:5, 30:19, 32:7, 32:10, 34:2
Shah's [2] - 23:19, 30:22

**share** [1] - 23:17
**shares** [1] - 19:25
**SHERI** [3] - 1:23, 59:7, 59:19
**shipment** [1] - 19:4
**shipped** [1] - 18:13
**shipper** [3] - 8:4, 16:17
**show** [4] - 12:10, 14:18, 17:13, 33:25
**showed** [4] - 5:17, 7:24, 24:6, 27:4
**showing** [3] - 5:10, 24:4, 25:7
**shown** [1] - 5:25
**shows** [2] - 32:21, 53:2
**side** [1] - 39:17
**sign** [2] - 50:6, 55:18
**signed** [5] - 49:3, 49:6, 53:23, 55:19
**signet** [1] - 33:4
**Signet** [1] - 23:13
**significance** [1] - 41:22
**significant** [4] - 12:21, 21:7, 42:8, 44:18
**similar** [1] - 29:24
**similarly** [1] - 22:23
**simple** [14] - 4:9, 5:19, 6:17, 6:25, 7:11, 7:12, 8:19, 11:17, 12:11, 13:3, 13:6, 26:12, 35:3
**simply** [7] - 9:2, 16:9, 20:1, 25:6, 35:7, 47:15, 47:18
**Singh** [6] - 5:13, 7:20, 32:9, 32:11, 33:20
**SINGH** [5] - 2:10, 13:13, 13:17, 30:12, 58:18
**sitting** [2] - 4:23, 5:4
**SKUs** [1] - 23:2
**slide** [2] - 5:18, 5:19
**small** [1] - 4:22
**smoke** [3] - 7:14, 7:15, 33:11
**social** [1] - 48:6
**sold** [3] - 6:6, 11:20, 31:13
**solely** [2] - 36:10, 38:24
**solemnly** [1] - 50:21
**someone** [1] - 20:12
**sometime** [1] - 5:2
**sometimes** [1] - 40:2
**soon** [1] - 4:14
**sorry** [2] - 22:11, 55:6
**source** [1] - 25:7

**span** [1] - 29:16
**speaks** [1] - 11:11
**specifically** [2] - 16:4, 22:17
**specifications** [2] - 25:14
**speculate** [1] - 44:6
**spent** [1] - 57:3
**spokesperson** [1] - 47:1
**SPRING** [1] - 1:24
**SS** [1] - 59:4
**stand** [1] - 4:16
**stands** [1] - 49:20
**start** [4] - 12:5, 21:2, 48:23, 55:6
**started** [2] - 7:10, 32:16
**starts** [2] - 12:11, 18:25
**state** [3] - 8:16, 15:20, 50:18
**STATE** [1] - 59:5
**statement** [3] - 7:21, 18:22, 26:21
**statements** [2] - 37:25, 38:2
**STATES** [6] - 1:1, 1:1, 1:4, 59:8, 59:10, 59:15
**States** [1] - 54:6
**stay** [2] - 51:16, 51:17
**STENOGRAPHICALLY** [1] - 59:12
**step** [2] - 46:16, 46:18
**steps** [1] - 24:16
**still** [3] - 6:8, 9:10, 10:3
**stone** [13] - 6:23, 7:22, 9:4, 9:7, 9:17, 11:25, 22:1, 22:7, 22:11, 25:22, 27:5, 28:10, 29:8
**stones** [10] - 9:10, 9:11, 9:13, 9:14, 11:13, 11:19, 11:20, 21:5, 24:5, 28:2
**stop** [4] - 9:20, 10:19, 11:5
**STREET** [1] - 1:24
**stricken** [3] - 38:14, 40:3, 40:5
**strive** [1] - 47:3
**STRONG** [1] - 1:6
**Strong** [188] - 4:7, 4:21, 5:15, 5:20, 6:20, 7:5, 7:6, 7:24, 7:25, 8:2, 8:5, 8:6, 8:8, 8:10, 8:11, 8:13, 8:15, 8:17, 8:20, 9:1,

9:6, 9:19, 9:21, 9:24, 9:25, 10:3, 10:5, 10:9, 10:13, 10:14, 10:15, 10:24, 11:3, 11:4, 11:10, 11:20, 12:3, 12:13, 12:20, 12:22, 13:1, 13:5, 13:7, 13:10, 14:21, 15:2, 15:3, 15:16, 15:17, 15:21, 15:24, 16:1, 16:2, 16:5, 16:8, 16:11, 16:14, 16:16, 16:21, 17:1, 17:4, 17:6, 17:8, 17:10, 17:20, 18:12, 18:17, 18:18, 18:21, 18:22, 19:1, 19:2, 19:5, 19:6, 19:10, 19:11, 19:16, 19:23, 19:24, 20:4, 20:8, 20:10, 20:11, 20:12, 20:18, 20:19, 20:23, 21:1, 21:2, 21:4, 21:6, 21:9, 21:12, 21:13, 21:17, 22:6, 22:11, 23:9, 23:15, 23:21, 24:4, 24:8, 24:14, 24:17, 24:19, 25:10, 25:15, 25:21, 25:24, 26:5, 26:16, 26:20, 26:22, 26:25, 27:6, 27:9, 27:20, 28:8, 28:14, 28:21, 29:2, 29:18, 30:7, 30:13, 30:15, 31:7, 31:9, 31:12, 32:18, 32:20, 32:22, 33:1, 33:8, 33:15, 33:19, 34:3, 34:8, 34:10, 34:16, 34:22, 34:24, 35:5, 35:8, 35:11, 42:3, 42:5, 42:7, 42:12, 42:14, 42:22, 42:25, 43:1, 43:2, 43:6, 43:7, 43:10, 43:13, 43:16, 43:20, 43:23, 44:3, 44:8, 44:12, 44:14, 44:16, 44:20, 44:22, 45:6, 45:8, 45:17, 45:21, 46:2, 54:8, 54:13, 54:18, 54:20, 55:1, 55:4
**Strong's** [2] - 25:4, 27:12
**submitted** [1] - 12:12
**substance** [2] - 41:25, 42:1
**substantial** [8] - 14:13, 26:1, 27:24, 29:19, 29:21, 42:14,

44:23, 45:18
**substantially** [8] - 12:20, 14:25, 21:7, 26:4, 28:24, 42:8, 43:9, 44:18
**subtract** [4] - 46:15, 52:14, 52:17, 52:23
**subtracting** [2] - 46:8, 46:13
**suddenly** [1] - 24:22
**sue** [2] - 20:12, 30:14
**sued** [1] - 20:13
**suffer** [1] - 35:5
**suffered** [1] - 35:5
**summary** [1] - 36:20
**supplied** [2] - 23:3, 29:3
**support** [1] - 34:13
**supposed** [2] - 27:11, 28:25
**supposedly** [1] - 32:13
**surely** [1] - 4:20
**survive** [1] - 10:7
**sustain** [2] - 39:22, 39:24
**swap** [1] - 20:1
**swear** [2] - 50:17, 50:21
**switch** [3] - 9:7, 11:14, 26:23
**sworn** [2] - 37:17, 41:11
**sympathy** [1] - 36:9
**system** [1] - 13:24

## T

**task** [2] - 4:14, 5:9
**Tejas** [4] - 6:5, 6:13, 16:23, 32:7
**Tejas'** [1] - 32:3
**telephone** [1] - 8:12
**ten** [1] - 51:19
**tens** [4] - 6:19, 6:22, 11:12, 29:17
**terms** [2] - 17:5, 42:22
**test** [1] - 27:17
**tested** [1] - 30:8
**testified** [11] - 9:16, 17:8, 17:19, 22:25, 23:8, 24:11, 25:18, 30:5, 30:19, 40:15, 41:6
**testify** [4] - 23:17, 23:24, 25:3, 41:15
**testifying** [2] - 40:18, 41:20
**testimony** [39] - 6:12, 6:18, 7:18, 8:14, 9:5,

15:23, 15:25, 16:23, 16:24, 17:11, 17:14, 17:16, 17:22, 18:20, 18:24, 22:13, 23:1, 23:19, 24:2, 29:10, 30:23, 33:21, 33:25, 34:3, 34:9, 37:17, 37:21, 38:14, 39:3, 40:8, 40:12, 40:24, 41:1, 41:8, 41:9, 41:11, 41:18, 41:19
**THAT** [2] - 59:9, 59:13
**THE** [58] - 3:5, 3:25, 4:3, 12:15, 13:11, 13:16, 30:11, 31:19, 35:15, 50:18, 50:20, 50:21, 51:4, 51:5, 51:10, 51:22, 51:24, 52:6, 53:16, 53:19, 53:20, 53:22, 53:23, 53:25, 54:1, 54:3, 54:4, 54:6, 55:21, 55:25, 56:7, 56:8, 56:9, 56:10, 56:11, 56:12, 56:13, 56:14, 56:15, 56:16, 56:17, 56:18, 56:19, 56:20, 56:21, 56:22, 58:4, 58:6, 58:19, 59:8, 59:10, 59:11, 59:12, 59:13, 59:14, 59:15
**their's** [1] - 32:18
**themselves** [3] - 7:13, 33:19, 57:12
**thereafter** [1] - 29:12
**therefore** [2] - 17:4, 43:3
**thinks** [1] - 39:18
**third** [2] - 6:9, 29:22
**thousands** [6] - 6:20, 6:22, 11:12, 29:17
**three** [5] - 4:23, 6:19, 21:18, 24:22, 28:6
**three-piece** [2] - 21:18, 28:6
**three-year** [1] - 6:19
**throughout** [2] - 6:11, 15:8
**timeline** [1] - 9:15
**timely** [1] - 21:10
**TITLE** [1] - 59:10
**TO** [1] - 59:10
**today** [5] - 3:23, 5:5, 9:3, 9:11, 35:13
**together** [1] - 50:22
**tone** [1] - 41:23
**took** [2] - 24:16, 36:11

**top** [1] - 28:21
**topaz** [6] - 22:1, 22:2, 22:7, 22:14, 22:20, 28:6
**total** [2] - 46:6, 46:17
**track** [1] - 11:10
**tracking** [3] - 5:24, 5:25, 6:1
**trade** [4] - 16:11, 30:1, 30:4, 45:13
**TRADING** [1] - 1:6
**Trading** [128] - 4:8, 4:21, 4:22, 5:15, 5:21, 6:20, 7:5, 7:6, 7:24, 8:5, 8:9, 8:11, 8:12, 8:13, 8:17, 8:20, 9:1, 9:6, 9:19, 9:21, 9:24, 9:25, 10:3, 10:5, 10:9, 10:13, 10:14, 10:15, 10:24, 11:3, 11:5, 11:10, 11:20, 12:3, 12:13, 12:20, 12:22, 13:1, 13:7, 13:10, 15:2, 15:3, 15:17, 16:8, 16:14, 17:8, 17:10, 18:18, 19:5, 19:12, 19:16, 19:24, 20:12, 20:18, 20:19, 21:1, 21:6, 21:9, 21:12, 21:13, 21:17, 22:11, 23:16, 23:21, 24:4, 24:14, 24:17, 24:19, 25:10, 25:15, 25:21, 25:24, 26:5, 26:16, 26:20, 26:22, 27:6, 27:9, 28:8, 28:14, 28:22, 29:18, 30:7, 30:13, 31:9, 31:12, 32:18, 32:22, 33:1, 33:8, 33:9, 33:15, 33:19, 34:10, 34:16, 34:23, 34:24, 35:5, 35:8, 42:3, 42:5, 42:7, 42:12, 42:23, 42:25, 43:1, 43:2, 43:6, 43:7, 43:13, 43:14, 43:16, 43:20, 43:24, 44:3, 44:12, 44:14, 44:16, 44:20, 45:6, 45:8, 45:21, 54:8, 54:13, 54:18, 54:20, 55:4
**Trading's** [18] - 8:2, 8:6, 13:5, 14:21, 20:23, 21:2, 21:5, 22:6, 27:20, 32:20, 35:11, 42:15, 43:10, 44:8, 44:22, 45:17, 46:2, 55:1

**Training** [1] - 26:25
**transactions** [3] - 8:4, 34:4, 34:7
**TRANSCRIPT** [3] - 1:17, 59:11, 59:13
**treated** [1] - 24:5
**trial** [7] - 9:13, 14:13, 38:25, 41:12, 41:15, 41:16, 48:23
**TRIAL** [1] - 1:16
**tried** [1] - 7:15
**trivial** [2] - 28:13, 43:11
**true** [8] - 15:9, 16:19, 27:6, 32:24, 37:11, 37:12, 39:7, 52:21
**TRUE** [1] - 59:11
**truly** [2] - 13:8, 20:4
**truth** [5] - 4:15, 5:9, 18:17, 41:13
**try** [3] - 4:9, 32:1, 48:17
**trying** [3] - 3:16, 7:16, 33:11
**Tuesday** [1] - 58:9
**tune** [1] - 31:16
**turn** [2] - 20:20, 21:14
**two** [10] - 6:11, 7:19, 13:23, 14:10, 16:7, 17:15, 26:4, 28:17, 28:18, 49:14
**type** [1] - 48:14

## U

**U.S** [1] - 20:6
**ultimately** [1] - 17:10
**unanimous** [4] - 47:5, 47:11, 49:21, 50:4
**unavailable** [1] - 41:15
**under** [9] - 17:4, 27:15, 27:20, 38:10, 41:12, 43:3, 43:5, 44:9, 44:13
**unfortunately** [1] - 53:8
**unimportant** [2] - 28:13, 43:11
**Unique** [150] - 5:2, 5:4, 5:21, 5:23, 5:24, 6:4, 6:9, 6:13, 6:16, 6:19, 7:2, 7:7, 7:8, 7:12, 7:24, 8:5, 8:6, 8:7, 8:14, 8:16, 8:20, 8:22, 8:24, 9:5, 9:9, 9:14, 9:16, 9:20, 9:22, 9:24, 10:2, 10:11, 10:16, 10:19, 10:22, 11:2, 11:6,

11:8, 11:15, 11:21, 11:22, 12:2, 12:13, 12:22, 12:24, 13:1, 14:17, 15:2, 15:24, 16:1, 16:3, 16:24, 19:9, 20:5, 20:21, 20:25, 21:15, 21:21, 21:22, 21:24, 21:25, 22:11, 22:16, 22:21, 22:23, 24:12, 24:13, 24:20, 24:23, 25:6, 25:9, 25:13, 25:20, 26:7, 26:10, 26:13, 26:19, 26:22, 27:8, 27:13, 27:16, 27:25, 28:5, 28:8, 28:17, 28:19, 28:23, 29:1, 29:5, 29:11, 29:14, 29:17, 29:19, 29:23, 30:8, 30:17, 31:6, 31:14, 31:15, 32:5, 32:19, 32:21, 32:25, 33:6, 33:16, 33:18, 34:13, 34:22, 35:6, 35:9, 42:2, 42:5, 42:10, 42:13, 42:20, 43:1, 43:4, 43:9, 43:14, 43:21, 44:9, 44:15, 44:16, 44:17, 44:21, 44:23, 44:25, 45:3, 45:5, 45:16, 45:19, 45:20, 45:23, 45:24, 45:25, 46:5, 46:9, 46:11, 46:14, 46:15, 46:19, 54:9, 54:11, 54:19, 55:3, 55:5, 55:8, 55:12
**UNIQUE** [1] - 1:10
**United** [1] - 54:6
**UNITED** [6] - 1:1, 1:1, 1:4, 59:8, 59:10, 59:15
**unless** [1] - 50:24
**unlike** [1] - 24:13
**unlikely** [2] - 25:1
**unpaid** [1] - 11:7
**unquote** [1] - 26:23
**untrue** [1] - 7:3
**unwilling** [1] - 47:13
**up** [8] - 7:3, 10:2, 21:12, 21:16, 45:14, 49:13, 50:12, 54:1
**UVA** [1] - 24:8

## V

**value** [1] - 32:24
**Vannay** [2] - 32:10
**verdict** [27] - 4:13, 12:16, 13:10, 14:16,

36:16, 36:17, 37:20, 47:5, 47:11, 47:18, 47:21, 49:21, 50:1, 50:3, 50:5, 50:6, 51:1, 51:13, 53:15, 53:17, 53:21, 54:5, 54:16, 55:22, 56:4, 56:5, 56:23
**verify** [1] - 24:16
**versus** [4] - 54:9, 54:13, 54:19, 55:3
**via** [1] - 48:5
**videotaped** [1] - 17:13
**views** [1] - 47:9
**violates** [1] - 48:20
**vital** [2] - 13:24, 20:24
**voice** [1] - 41:23
**vote** [1] - 49:23
**VS** [1] - 1:9

## W

**waiting** [2] - 4:24, 49:17
**wants** [1] - 58:12
**warning** [1] - 4:1
**warranty** [6] - 21:1, 35:12, 37:2, 45:3, 45:18, 55:14
**ways** [1] - 7:20
**weak** [2] - 57:15, 57:16
**weeks** [1] - 17:16
**Wei** [1] - 54:15
**weight** [11] - 17:17, 23:20, 23:23, 24:1, 30:22, 39:9, 39:11, 41:4, 41:7, 47:17
**WESTERN** [1] - 1:2
**whereas** [1] - 3:9
**wire** [1] - 19:10
**WITH** [1] - 59:14
**witness** [8] - 39:3, 39:4, 40:10, 40:12, 40:15, 41:11, 41:12, 41:20
**witness's** [6] - 40:16, 40:17, 40:19, 40:21, 40:24, 41:1
**witnesses** [7] - 23:21, 23:24, 24:1, 37:17, 38:1, 41:5, 41:7
**words** [4] - 18:2, 19:3, 42:18, 42:23
**worthwhile** [1] - 3:20
**writing** [3] - 48:5, 49:6, 49:8

## Y

**YASHDEEP** [1] - 2:10
**year** [1] - 6:19
**years** [3] - 11:11, 24:20, 26:18
**yesterday** [1] - 58:7
**YORK** [2] - 2:6, 58:17
**York** [2] - 4:6, 54:10
**york** [1] - 5:17
**yourself** [1] - 50:24
**yourselves** [1] - 47:6